**LOCAL 2047, AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, Plaintiff,**

v.

**DEFENSE GENERAL SUPPLY CENTER, Defendant.**

**Civ. A. No. 75–0573.**

United States District Court, E. D. Virginia, Richmond Division.

Nov. 17, 1976.

Jay J. Levit, Stallard & Levit, Richmond, Va., for plaintiff.

Robert W. Jaspen, Asst. U. S. Atty., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, a labor organization representing government employees (Union), brings this action to redress an alleged breach of a collective bargaining agreement by the defendant, Defense General Supply Center (DGSC). Plaintiff seeks injunctive relief. Jurisdiction is alleged under 28 U.S.C. § 1331. The matter comes before the Court on cross-motions for summary judgment.

The material facts are not in dispute. The parties entered into a Collective Bargaining Agreement (Agreement) on January 14, 1972. The Agreement was authorized by Executive Order 11491, October 29, 1969, 3 C.F.R. 1969 Comp. 191; 34 Fed.Reg. 17605, as amended. Under the Collective Bargaining Agreement, the Union has been entitled to receive, and the government has been obliged to furnish, certain information pertaining to employees. The defendant acquiesces in the plaintiff's contention that the requested information is relevant to its representative function. Prior to September 25, 1975, DGSC regularly provided the Union with this information. By letter dated September 25, 1975, Roger J. Simboli, an agent of the defendant, informed the Union that six categories of documents theretofore furnished, would no longer be made available.[1] The reasons cited for this posi-

---

1. The categories of documents and information no longer supplied the Union are:

a. The names of employees nominated for outstanding performance appraisals, quality step increases, and cash awards for sustained superior performance formerly provided under Article XXII, Section 2.

b. Copies of referral lists for promotion and lists of employees selected for promotion formerly provided under Article XXI, Section 2 (Revised).

c. Copies of retention registers for each competitive level subject to reduction in force and informational copies of reduction in force no-

tion was the then recently enacted prohibitions contained in the Privacy Act of 1974, Pub.L.No. 93–579, 88 Stat. 1897, 5 U.S.C. § 552a. The Union vigorously opposed what it viewed as a unilateral change of the collective bargaining agreement. Subsequently, DGSC agreed to continue furnishing two categories of information while supplying one in a "sanitized" form (*i. e.*, without disclosing the identity of individuals). Three categories of information previously available, however, were deemed by the defendant to be nondisclosable under the Privacy Act.

It is the Union's position that the Privacy Act cannot be utilized to affect a unilateral change in an existing collective bargaining agreement. Accordingly, the Union views the defendant's action herein, as an unjustifiable breach of the Agreement. The DSGC, on the other hand, maintains that the Privacy Act precludes the disclosure of

the requested information. Section 12(a) of Executive Order 11491 and Article IV, Section 1(a) of the Collective Bargaining Agreement enacted thereunder, specifically provide that the terms of the Agreement are governed by existing and future law. The defendant maintains that the Privacy Act and its implementing regulations,[2] enacted subsequent to the signing of the Agreement, is just such a future law which alters the provision of the Agreement. In light of the future laws clause, the defendant's action of withholding the information is proper if: (1) disclosure is prohibited by the Privacy Act and its regulations; and (2) regulations effectuating nondisclosure are valid.

■ Absent the written consent of the individual, *any* disclosure of information covered by the Privacy Act is prohibited, unless authorized by one or more of eleven specific exceptions. 5 U.S.C. § 552a(b).[3]

tices affecting unit employees formerly provided under Article XXV, Sections 2 and 3.

d. Names of employees suspected of abusing sick leave, employees with excessive unscheduled emergency leave and employees continually late for duty formerly provided under Article XII, Section 1.

e. A copy of the justification furnished to the Office of Civilian Personnel when an employee entitled to priority consideration for repromotion fails to be selected when his name appears among the best qualified candidates formerly provided under Article XXI, Section 4.

f. Any matter not specifically covered by the Agreement such as information copies of letters of warnings, proposed disciplinary actions, proposed adverse actions, etc.

2. Validly issued administrative regulations have the force and effect of law. *Public Utilities Commission of California v. United States,* 355 U.S. 534, 542, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958); *Maryland Cas. Co. v. United States,* 251 U.S. 342, 349, 40 S.Ct. 155, 64 L.Ed. 297 (1920); *Rodway v. United States Department of Agriculture,* 168 U.S.App.D.C. 387, 514 F.2d 809, 814 (1975).

3. 5 U.S.C. § 552a(b) provides:

No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be—

(1) to those officers and employees of the agency which maintains the record who have

a need for the record in the performance of their duties;

(2) required under section 552 of this title;

(3) for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section;

(4) to the Bureau of the Census for purposes of planning or carrying out a census or survey or related activity pursuant to the provisions of title 13;

(5) to a recipient who has provided the agency with advance adequate written assurance that the record will be used solely as a statistical research or reporting record, and the record is to be transferred in a form that is not individually identifiable;

(6) to the National Archives of the United States as a record which has sufficient historical or other value to warrant its continued preservation by the United States Government, or for evaluation by the Administrator of General Services or his designee to determine whether the record has such value;

(7) to another agency or to an instrumentality of any governmental jurisdiction within or under the control of the United States for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought;

(8) to a person pursuant to a showing of compelling circumstances affecting the

*See generally*, Note, The Privacy Act of 1974: An Overview, 1976 Duke L.J. 301 (1976). The parties agree that the information sought by the Union is covered by the Act.[4] It is also undisputed that there has been no written consent by individual employees to release the information to the Union. Disclosure is permissible, therefore, *only if one of the enumerated exceptions to the Act is applicable.*

■ The only relevant provision for purposes of this action is the routine use exception. That provision enables an agency to disclose an individual's record without written consent for routine uses. 5 U.S.C. § 552a(b)(3). Routine uses are those "which [are] compatible with the purpose for which . . . [the information] was collected." 5 U.S.C. § 552a(a)(7). This rather general definition is given some degree of precision by regulations promulgated by each agency. On an annual basis, each affected agency is required to publish "each routine use of the records contained in the system, including the categories of users and the purpose of such use." 5 U.S.C. § 552a(e)(4)(D).[5] Pursuant to this scheme, the Civil Service Commission (CSC) published the routine use of the records kept under its authority. See 40 Fed.Reg. 54355 *et seq.* (November 21, 1975). Record keeping by the DGSC is classified within the system as "general personnel records" or "CSC/GOVT–3." 40 Fed. Reg. 54361 (November 21, 1975). Of the eighteen published routine uses, only use (i) pertains to labor unions. That particular use involves disclosures to unions made "in response to requests for names of employ-

ees and identifying information." The information requested by the plaintiff goes substantially beyond the mere identification of employees.[6] Its disclosure, therefore, does not fall within the routine use exception under that term's current perimeters. The Court, accordingly, concludes that the requested information cannot be disclosed, absent written consent, under the Privacy Act and its implementing regulations. The Court must, therefore, determine whether the pertinent regulations are valid.

Validity, in the context of the instant action, must be viewed in terms of a failure to list as a routine use the disclosure of information to a recognized labor union pursuant to a negotiated collective bargaining agreement. It is essentially the Union's position that the CSC is obligated to include disclosures pursuant to the Agreement in listing routine uses under the Privacy Act. This contention is essentially an equitable one. Since neither the Act nor its legislative history specifically precludes disclosure of relevant information to a recognized labor union; and since it lies within the government's rule-making power to allow for such disclosure, the government, it is argued, should not be permitted to promulgate regulations which have the effect of terminating the flow of information contracted for under a valid collective bargaining agreement. The Union's position ultimately rests upon the proposition that an agency's authority to promulgate regulations under the Privacy Act is limited by the terms of a previously negotiated collective bargaining agreement.

health or safety of an individual if upon such disclosure notification is transmitted to the last known address of such individual;
(9) to either House of Congress, or, to the extent of matter within its jurisdiction, any committee or subcommittee thereof, any joint committee of Congress or subcommittee of any such joint committee;
(10) to the Comptroller General, or any of his authorized representatives, in the course of the performance of the duties of the General Accounting Office; or
(11) pursuant to the order of a court of competent jurisdiction.
There is no allegation that the information sought by the Union is disclosable under the Freedom of Information Act, 5 U.S.C. § 522 *et*

*seq.* The Court, therefore, has no occasion to determine whether the contested information is disclosable under 5 U.S.C. § 552a(b)(2). See *Tennessean Newspaper, Inc. v. Levi*, 403 F.Supp. 1318, 1320 (M.D.Tenn.1975).

4. The term "record" specifically includes employment history. 5 U.S.C. § 552a(a)(4).

5. Interested groups and persons are entitled to comment upon proposed listing of routine uses. 5 U.S.C. § 552a(e)(11).

6. This routine use appears to be more applicable to the problems of unions seeking recognition rather than those already recognized.

■ The Court agrees with the Union, for the purposes of this action, that the Privacy Act and disclosure of the contested information to a recognized union are not inherently inconsistent.[7] The Court does not, however, conclude that an agency's rule-making authority is restricted by a contractual agreement entered into prior to the enactment of the legislation which necessitates the promulgation of regulations. *Cf. J. I. Case Co. v. N. L. R. B.*, 321 U.S. 332, 337, 64 S.Ct. 576, 88 L.Ed. 762 (1944); *Forbes Federal Credit Union v. National Credit Union Administration*, 477 F.2d 777, 784 (10th Cir. 1973).

■ Agency regulations promulgated pursuant to specific congressional authority are presumptively valid and are entitled to great deference. *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1968). It is not enough to show that other policy considerations could justify the adoption of a different regulation. The burden is placed upon the person attacking the regulation to establish that it is inconsistent with the statute it implements. *Florida v. Matthews*, 526 F.2d 319, 323 (5th Cir. 1976); *Grubbs v. Butz*, 514 F.2d 1323, 1330 (D.C.Cir. 1975). The Court is not satisfied that a regulation which restricts the unconsented disclosure of personal information is inconsistent with the Privacy Act.[8] Legislative history of the Act, while silent as to the disclosure of information to unions, reflects a general congressional concern over disclosures of information by the collecting agency to third parties.[9] This particular purpose of the Act[10] is advanced

7. Neither the language of the Privacy Act nor its legislative history indicate that Congress intended to preclude disclosure to recognized labor unions of relevant information under a negotiated collective bargaining agreement. A recognized union may occupy a unique position under the Privacy Act as it is the exclusive representative of the employees for whom the records are maintained. Disclosing relevant information to recognized unions may easily be seen to advance the nation's federal labor-management relations policy by providing the union with data necessary to pursue its representational duties.

8. The information involved in this litigation can reasonably be seen to be of a personal nature. See footnote 1, *supra*. An individual's disciplinary record and the reasons for which a person was passed over for promotion could well prove to be embarrassing or injurious if publicly disclosed.

9. The original Senate version of the bill contained more stringent restrictions on the transfer of personnel information between and outside federal agencies. A more flexible "routine use" exception was adopted in the bill as finally enacted.

The compromise definition should serve as a caution to agencies to think out in advance what uses it will make of information. This act is not intended to impose undue burdens on the transfer of information to the Treasury Department to complete payroll checks, the receipt of information by the Social Security Administration to complete quarterly posting of accounts, or other such housekeeping measures and necessarily frequent interagency or intra-agency transfers of in-

formation. *It is, however, intended to discourage the unnecessary exchange of information to another person or to agencies who may not be as sensitive to the collecting agency's reasons for using and interpreting the material.*

Analysis of House and Senate Compromise Amendments to the Federal Privacy Act, 120 Cong.Rec. H. 12243, 12244 (daily ed. December 18, 1974) and 120 Cong.Rec. S. 21815, 21816 (daily ed. December 17, 1974) (emphasis supplied). Congress further "directed [agencies] to be far more careful about the dissemination of personal information to persons not governed by the enforcement provisions of this bill." Privacy Act Compromise Analysis, 120 Cong.Rec. at H. 12244 (daily ed. December 18, 1974) and 120 Cong.Rec. at S. 21816 (daily ed. December 17, 1974).

10. One purpose of the Privacy Act, as set forth in the Senate Report, was

to promote governmental respect for the privacy of citizens by requiring all departments and agencies of the executive branch and their employees to observe certain constitutional rules in the computerization, collection, management, use *and disclosure of personal information about individuals.*

It is to promote accountability, responsibility, legislative oversight, and open government with respect to the use of computer technology in the personal information systems and data banks of the Federal Government and with respect to all of its other manual or mechanized files.

It is designed to prevent the kind of illegal, unwise, overbroad, investigation and record surveillance of law-abiding citizens produced

by the listing of a limited number of narrowly defined routine uses. When, as is contended here, such a listing is so narrow as to impair the legitimate flow of information,[11] the answer lies in expanding the list.[12]

■ In summary, the requested information may not be disclosed, absent individual consent, under the current CSC listings of routine uses. The failure of the CSC to include a routine use to cover the information, moreover, is not inconsistent with the Privacy Act. It follows, therefore, that the defendant is entitled to judgment.

in recent years from actions of some overzealous investigators, and the curiosity of some government administrators, or *the wrongful disclosure and use, in some cases, of personal files held by Federal agencies.* S.Rep.No.93–1183, 93d Cong., 2d Sess. (1974); 1974 U.S.Code Cong. & Ad.News 6916 (1974). (Emphasis supplied) This goal was to be achieved, in part, by requiring
 every department and agency to insure, by whatever steps they deem necessary:
 That the information they keep, disclose, or circulate about citizens is as accurate, complete, timely, and relevant to the agency's needs as possible;
 That they refrain from disclosing. it unless necessary for employee duties, or from making it available outside the agency without the consent of the individual and proper guarantees, unless pursuant to open records laws, or unless it is for certain law enforcement or other purposes;
 That they take certain administrative actions to keep account of the employees and people and organizations who have access to the system or file, and to keep account of the disclosures and uses made of the information;
S.Rep.No.93–1183, 93d Cong., 2d Sess. (1974); 1974 U.S.Code Cong. & Ad.News 6916, 6917–18 (1974).

11. It should be noted that the Union is not totally precluded from obtaining the requested information. The union membership could provide written consent to such disclosure. The defendant, moreover, has since the inception of this controversy, provided individual employees with an extra copy of all personnel decisions pertaining to them in order that the employee may voluntarily forward the same to the Union.

12. It appears that the Union has, in fact, attempted to persuade the CSC to broaden its listing of routine uses. *See* 41 Fed.Reg. 11075, 11076 (March 16, 1976).