Alan R. SMIERTKA, Plaintiff,

v.

UNITED STATES DEPARTMENT OF TREASURY, INTERNAL REVENUE SERVICE, et al.,[1] Defendants.

Civ. A. No. 76–2132.

United States District Court, District of Columbia.

Feb. 16, 1978.

---

1. In addition to the defendant agency, plaintiff also named as defendants a number of agency officials. However, section 3(g)(1) of the Privacy Act, 5 U.S.C.A. § 552a(g)(1) (Supp.1976) authorizes suits to be brought only against federal agencies, and not against particular officials. *See Morpugo v. Board of Higher Education*, 423 F.Supp. 704, 714 n.26 (S.D.N.Y.1976). The individual defendants in this case are thus not proper parties.

Robert M. Tobias, Gen. Counsel, Thomas E. Angelo, Associate Counsel, Hayward C. Reed, Asst. Counsel, National Treasury Em-

ployees Union, Washington, D. C., for plaintiff.

John J. McCarthy, Donald J. Gavin and Mikal H. Frey, United States Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

SIRICA, District Judge.

### I. *Background Facts.*

■ This case arises under the Privacy Act of 1974, Pub.L. No. 93–579, 88 Stat. 1897, 5 U.S.C.A. § 552a (Supp.1976).[2] Plaintiff, a special agent employed by defendant Internal Revenue Service (IRS) until the agency discharged him for cause effective July 16, 1976, relies on section 3(d)(1) of the Privacy Act, 5 U.S.C.A. § 552a(d)(1) (Supp. 1976),[3] as a basis for compelling the agency to disclose the contents of requested documents pertaining to his employment. At issue are an assortment of agency reports, analyses, internal communications and memoranda that contain references to plaintiff and that have some connection with the adverse personnel action taken against him. Plaintiff contends that the materials he seeks are covered by the access provision of the statute[4] and are not covered by any of the statutory exemptions to disclosure.[5] The agency makes just the opposite contentions. The agency maintains that the reports plaintiff wants need not be disclosed because they are not contained in a "system of records" as defined by the statute.[6] Beyond this, the agency argues the analyses, internal communications and memoranda need not be turned over because they are protected by the litigation material exception to disclosure.[7]

The particulars of the controversy are not in dispute. In bare-bones outline, a review of the relevant facts reveals that plaintiff was employed by the IRS as a special agent in the Detroit, Michigan district office until he was dismissed for cause on July 16, 1976. Plaintiff contested his discharge. But the agency concluded that the specifications of misconduct against plaintiff were sustained and warranted his dismissal. Plaintiff appealed this decision, and the case is presently pending before the Civil Service Commission.

On the same date he was dismissed, plaintiff, through his legal representative, a staff attorney working for the National Treasury Employees union,[8] made requests under the Freedom of Information Act (FOIA) and Privacy Act for all agency documents in any way related to the adverse action taken against him. These requests were made separately yet, because of the apparent overlap between the two statutes, they were phrased identically and asked for

2. As amended by Pub.L. 94–183, 89 Stat. 1057 (December 31, 1975).

3. 5 U.S.C.A. § 552a(d)(1) (Supp.1976) provides that "Each agency that maintains a system of records shall":

   upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him  .   .  . .

4. *Id.*

5. *Privacy Act* §§ 3(d)(5), 3(j) & 3(k), 5 U.S.C.A. §§ 552a(d)(5), (j) & (k) (Supp.1976).

6. *Privacy Act* § 3(a)(5), 5 U.S.C.A. § 552a(a)(5) (Supp.1976). This provision defines the term "system of records" as:

a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual.

7. *Privacy Act* § 3(d)(5), 5 U.S.C.A. § 552a(d)(5) (Supp.1976). This section reads:

   nothing in this section shall allow an individual access to any information compiled in reasonable anticipation of a civil action or proceeding.

8. Plaintiff is a member of the National Treasury Employees Union and, as such, is afforded the procedural protections specified in the collective bargaining agreement between the union and the government. These protections guarantee members the right to litigate adverse personnel actions taken against them through arbitration proceedings, which, according to defendant, are regularly convened at the instance of discharged union employees.

exactly the same materials.[9] Also recognizing the interface between the two disclosure provisions, the agency considered the dual requests together though it responded to them separately.[10] The agency then proceeded to release some of the requested information.[11] But it also withheld much information based on several FOIA exemptions,[12] while withholding the same and additional materials, including the reports, analyses, communications and memoranda at issue in this case, on the grounds that disclosure of the requested items was not required by the Privacy Act.[13] The agency informed plaintiff that disclosure of these items was not obligatory since "The portion of information denied to you concerning other individuals [the reports] is not information concerning [you] and therefore, is exempt under the Privacy Act," while "the remaining documents denied to you were compiled in reasonable anticipation of a civil action or proceeding and we assert the exemption under 552a(d)(5) as the basis for our decision."[14]

This lawsuit followed. Plaintiff chose not to litigate the question of whether the FOIA mandates access to the requested documents. Instead, he elected to base his claim solely on the disclosure provisions of the Privacy Act. The contentions of the parties are succinctly stated. The agency avers that the investigative reports sought by plaintiff are not disclosable because they do not qualify as "records" in a "system of records" within the meaning of the statute,[15] while the balance of requested items need not be disclosed since they are materials prepared by the agency in "reasonable anticipation" of civil litigation.[16] Plaintiff steadfastly disputes these contentions. The matter is presently here on crossmotions for summary judgment.

## II. *Basic Statutory Policies and Provisions.*

The basic policies underlying the Privacy Act are straightforward and do not require extended discussion. A review of the statutory provisions and implementing regulations [17] reveals a primary aim of safeguarding the interest of citizens in informational privacy by creating a code of fair information practices that delineates the duties owed to individual citizens by federal agencies that collect, store and disseminate personal information about them. The statute does not forbid agencies from collecting, maintaining and using private information about individuals.[18] Quite to the contrary, various provisions of the Act explicitly recognize the legitimate needs of government departments to acquire, rely on and disseminate relevant personal information. But the statute does impose informational guidelines on federal agencies designed to curb abuses in the acquisition and use of information about citizens brought on by technological developments in the field of computers and the general increase in gov-

---

9. Plaintiff's Amended Complaint, Exhibits A & D.

10. *Id.*, Exhibits C, E & F.

11. *Id.*

12. The IRS specifically relied on exemptions 3, 5, 6 and 7 of the Freedom of Information Act, 5 U.S.C.A. §§ 552(b)(3), (5), (6) and (7) (Supp. 1976). The agency invoked exemption 3 to withhold materials specifically excepted by virtue of 26 U.S.C.A. §§ 6103 and 7213 (Supp. 1976), while holding back other items as intra-agency communications, personal data and investigatory files protected by exemptions 5, 6 and 7 respectively.

13. Plaintiff's Amended Complaint, Exhibit F.

14. *Id.*

15. *Privacy Act* § 3(a)(5), 5 U.S.C.A. § 552a(a)(5) (Supp.1976).

16. *Id.*, § 3(d)(5), 5 U.S.C.A. § 552a(d)(5) (Supp. 1976). *See* note 7 *supra* for the text of this provision.

17. *Privacy Act Implementation: Guidelines and Responsibilities*, 40 Fed.Reg. 28, 948 (July 9, 1975).

18. There is, however, one important exception to this general rule. Section 3(e)(7) of the Act, 5 U.S.C.A. § 552a(e)(7) (Supp.1976) prohibits agencies from collecting or maintaining any "record describing how any individual exercises rights guaranteed by the First Amendment" unless certain preconditions are met. In effect, this type of information falls in an area made untouchable by statute.

ernmental functions that entail decisions based on private facts.

The implementation of these statutory objectives is also straightforward. To begin with, the statute places general limitations [19] on the kinds of information agencies are permitted to collect and the ways agencies are allowed to go about obtaining information. Section 3(e)(1) [20] of the Act permits agencies to store information about individuals only if the records are "relevant and necessary to accomplish a purpose" that is "required to be accomplished by statute or by executive order of the President." Sections 3(e)(2) [21] and 3(e)(3) [22] of the statute direct collecting authorities to gather information relevant to agency decision-making directly "from the subject individual" whenever "practicable" and to "inform each individual [asked] to supply information" of reasons for the inquiry so that the decision to furnish information is intelligently and voluntarily made. Worthy of attention in this regard are the requirements that collecting agencies furnish information sources with an indication of the legal authority by which the information is being requested,[23] a statement about whether the individual is obligated to answer the questions posed to him,[24] and notice of the consequences of failing to disclose the requested information.[25]

Once agencies have permissibly collected information, they are restricted in what they may do with it. Section 3(b) [26] of the statute forbids agencies that maintain records from disclosing information "to any person, or to another agency" without the consent of the individual to whom the information pertains. But this prohibition is subject to a number of exceptions [27] that allow agencies to furnish personal data without the necessity of obtaining consent if, for among other principal reasons, agency staff persons "have a need for the record," [28] where the information is subject to mandatory disclosure under the Freedom of Information Act,[29] where disclosure is to put the information to a "routine use," [30] if the record is sought by appropriate authorities for law enforcement purposes [31] and whenever "a court of competent jurisdiction" orders disclosure.[32]

Other provisions of the Act direct agencies to maintain a standard of quality for the information contained in government records. Section 3(e)(5) [33] of the statute strives to insure informational quality by requiring governmental bodies to maintain the records they use in "making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." In a like vein, section 3(e)(6) [34] mandates that agencies "make reasonable efforts" to see that the "records are accurate, complete, timely, and relevant" before "disseminating [them] to any person other than an agency." A fair reading of these provisions, however, reveals that high standards of informational quality are by

19. *Privacy Act* § 3(e), 5 U.S.C.A. § 552a(e) (Supp.1976).

20. 5 U.S.C.A. § 552a(e)(1) (Supp.1976).

21. *Id.*, § 552a(e)(2) (Supp.1976).

22. *Id.*, § 552a(e)(3) (Supp.1976).

23. *Id.*, § 552a(e)(3)(A) (Supp.1976).

24. *Id.*

25. *Id.*, § 552a(e)(3)(D) (Supp.1976).

26. *Id.*, § 552a(b) (Supp.1976).

27. *Id.*, § 552a(b)(1–11) (Supp.1976).

28. *Id.*, § 552a(b)(1) (Supp.1976).

29. *Id.*, § 552a(b)(2) (Supp.1976).

30. *Id.*, § 552a(b)(3) (Supp.1976). The term "routine use" is broadly defined by section 3(a)(7) of the Act, 5 U.S.C.A. § 552a(a)(7) (Supp.1976) to mean, "with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected."

31. *Id.*, § 552a(b)(7) (Supp.1976).

32. *Id.*, § 552a(b)(11) (Supp.1976).

33. *Id.*, § 552a(e)(5) (Supp.1976).

34. *Id.*, § 552a(e)(6) (Supp.1976).

no means inevitable. Neither section imposes the kind of precise quality standards that are necessary to guarantee that records relied on and disseminated by federal agencies are accurate and complete. Indeed, the duties imposed by these provisions are models of imprecision and depend for their efficacy in large part on agency commitment and discretion.[35]

■ Sections 3(e)(5) and 3(e)(6) are not the only provisions of the statute designed to assure accurate and complete records however. In addition to sections 3(e)(5) and 3(e)(6), section 3(d)[36] of the Privacy Act similarly aims at making sure that agency records contain only complete and accurate information. Section 3(d) operates by giving interested individuals access to agency records that identify and pertain to them so that they can detect misinformation and seek corrective amendments to mistaken records. Specifically, this section operates by allowing access to information contained in any "system of records"[37] maintained by subject agencies provided that neither the "system" itself nor the kind of information it contains is exempt under the statute.[38]

It then gives requesting individuals the right to seek amendments to their records if they are thought to contain misinformation.[39] And finally, it allows requestors, in the event agency officials refuse to amend their records as requested, to insert in the appropriate file a "statement setting forth the reasons for [their] disagreement with the refusal of the agency."[40] It is the scope of the access part of this provision that is the subject of the instant controversy.

■ Properly understood, the right to access under section 3(d) is aimed entirely at improving informational quality. This is in sharp contrast to parallel rights guaranteed by the Freedom of Information Act. Unlike the FOIA, access to agency records under section 3(d) is not a statutory objective for its own sake. In contrast to the FOIA, the right of access afforded by the Privacy Act is not designed to free up public entry to the full range of government files. Rather, access under the Privacy Act is merely a necessary adjunct to the broader objective of assuring information quality by obtaining the views of persons with the

---

**35.** The key term used in these sections is "reasonableness." Section 3(e)(5), 5 U.S.C.A. § 552a(e)(5) (Supp.1976), dictates that records be kept "with such accuracy, relevance, timeliness and completeness as is reasonably necessary to assure fairness to the [affected] individual." Section 3(e)(6), 5 U.S.C.A. § 552a(e)(6) (Supp.1976) likewise uses a reasonableness standard in mandating that agencies "make reasonable efforts" to keep records "accurate, complete, timely, and relevant." Obviously, use of "reasonableness" language creates loose and open-ended standards. This is so because duties based on the criterion of "reasonableness" are determined through the process of balancing all of the relevant competing interests at stake. In the context of the Privacy Act, this balancing requires consideration of both agency resources and the ability of federal agencies to assure accurate and complete records as well as the likelihood that inaccurate and incomplete records will cause injury to the subject individual.

**36.** 5 U.S.C.A. § 552a(d) (Supp.1976).

**37.** This term is defined in section 3(a)(5) of the Act, 5 U.S.C.A. § 552a(a)(5) (Supp.1976) to mean groups of records from which information is "retrieved by the name of the individual or by some identifying number, symbol, or oth-

er identifying particular assigned to the individual." By its terms, this definition excludes records that are not keyed to a personal identifier assigned to the requesting individual. The reason for this is plain. It would require a monumental amount of effort for agencies to locate records that contain references to interested persons, but which are identified by someone else's name, or other identifying particular.

**38.** The statute provides for numerous exceptions to access. See 5 U.S.C.A. §§ 552a(j) (general exemptions) and 552a(k) (specific exemptions) (Supp.1976). The great majority of these exemptions do not bar access unless the heads of subject agencies actually promulgate rules to bring the exceptions into effect. Id. One exemption, however, is self-executing. See 5 U.S.C.A. § 552a(d)(5) (exemption for information compiled in reasonable anticipation of civil litigation) (Supp.1976). This exemption protects a certain type of information and does not depend upon existing agency rules.

**39.** 5 U.S.C.A. § 552a(d)(2) (Supp.1976).

**40.** Id., § 552a(d)(3) (Supp.1976).

interest and ability to contribute to the accuracy of agency records.

This is not to say, however, that access under section 3(d) *depends on* an evaluation of the reasons behind particular requests for information. The statute makes no distinctions based on the apparent motivation underlying individual requests for access. Either the request falls within the terms of the statute, or it does not, regardless of why it is being made. On the other hand, an appreciation of the circumstances surrounding particular requests is helpful in identifying the policy implications that strongly influence the interpretation of statutory terms. An evaluation of the background situation is especially useful where the controlling statutory provisions are loosely drafted and where ambiguities in the statute are to be settled based on an analysis of the overall statutory objectives.

III. *The Various Analyses, Communications and Memoranda Requested by Plaintiff are not Subject to Disclosure.*

■ Plaintiff requested access to all records maintained by the IRS that related in any way to his termination from agency employment. Covered by this request is an assortment of agency analyses, communications and memoranda dealing with plaintiff's fitness for continued government employment and prepared by agency staff during the period immediately preceding plaintiff's firing. The IRS withheld these items from plaintiff on the grounds that they are exempt from disclosure under section 3(d)(5)[41] of the statute as records "compiled in reasonable anticipation of a civil action or proceeding." This Court agrees.

■ Plaintiff does not dispute that the materials withheld on the authority of section 3(d)(5) were prepared "in reasonable anticipation" of litigation likely to grow out of the adverse action taken against him.

Nor could he be given the subject of the documents and the circumstances surrounding their preparation. But plaintiff maintains that the (d)(5) exemption is nevertheless inapplicable. Plaintiff basically contends that the protection afforded by section 3(d)(5) was meant to extend only to items protected under the attorney's work product doctrine, and not, as in this case, to documents prepared by and at the direction of lay agency staff persons.

This reading of the (d)(5) exemption is by no means implausible. To be sure, the legislative history behind the provision hints that the provision was intended to carve out an exception limited to work product materials.[42] As a remark made during the relevant House debate reveals, "attorney's files that are collected in anticipation of a lawsuit should [not] be subject to the application of the Act in any instance, much less the access provision."[43] A review of the entire debate, however, shows that the reference to attorney's files was meant only to exemplify the range of materials protected by the exemption, and not to exhaust it. As the debate makes plain, "the purpose of the [exemption] is to protect *as an example,* the file of the U. S. Attorney or the solicitor that is prepared in anticipation of a suit against the United States for an accident or some such thing."[44] The inference that emerges from this legislative history is that section 3(d)(5) was meant to afford the broad protection its broad terms imply.

Nor does a literal reading of the litigation materials exemption run afoul of the overall statutory policy of improving informational quality. Unlike with other information contained in agency files, information compiled in anticipation of civil litigation will eventually be disclosed to the affected person at some stage in the litigation process. Moreover, if the affected party then detects that the information about him is inaccurate, he has an opportunity to contest

**41.** *Id.,* § 552a(d)(5) (Supp.1976).

**42.** *See* 120 Cong.Rec.H 36, 959–60 (1974) (remarks of Reps. Butler, Erlenborn and Moorhead).

**43.** *Id.,* (remarks of Rep. Erlenborn).

**44.** *Id.,* (further remarks of Rep. Erlenborn) (emphasis supplied).

it and to provide rebuttal evidence to support his point of view. And finally, if the affected person prevails in the proceeding and in the process controverts facts contained in agency records, the agency will have no recourse but to adjust the mistaken records to accord with the decision reached by the fact-finder.

In the case now before the Court, plaintiff requested the agency analyses, communications and memoranda pertaining to him as discovery to help him appeal his termination for cause through negotiated arbitration procedures and available administrative channels. Before these documents are ever introduced into evidence by the agency, plaintiff is guaranteed the right to examine them. And in the event he prevails in setting aside his termination as unsupported by the facts, the agency will, of course, have to conform his records accordingly.

These eventualities go far towards reducing the harsh effects of giving the (d)(5) exemption a broad reading. In effect, all that plaintiff is losing by this interpretation is temporary access to information that eventually will be disclosed to him and that ultimately will be corrected through the litigation process. And that, in the Court's judgment, is not an unacceptably severe result.

IV. *The Daily Reports Requested by Plaintiff are not Disclosable Records under the Statute.*

■ In addition to the analyses, communications and memoranda pertaining to the adverse action against plaintiff, the IRS withheld a series of daily reports prepared by an agency investigator and that contain references to the investigation conducted of plaintiff. Reports of this kind are apparently prepared by investigators as routine summaries of their work. The agency justifies withholding these items on the claim that they do not qualify as "records" in a "system of records" within the meaning of the statute. Again, this Court agrees.

■ To begin with, section 3(d)(1) [45] of the statute only mandates disclosure of "information pertaining to [the requestor] *which is contained in [a] system [of records]."* [46] This requirement represents a substantial limitation on disclosure since the term "system of records" is restrictively defined as any group of records "from which information *is retrieved by the name of the individual* or by some identifying number, symbol, or other identifying particular *assigned to the individual."* [47] Only if information about individuals is maintained in groups of records keyed to the requestor are agencies required to afford access. This means that even if information pertaining to the requestor appears in a system of records, it need not be disclosed unless the information is retrievable by means of the requestor's own name or other personal identifier. That it can be easily retrieved in some other way by some other identifier is wholly beside the point.

This interpretation of the access provision basically tracks the relevant administrative regulations implementing the Privacy Act. [48] As the regulations make plain, "The 'are retrieved by' criterion implies that the grouping of records under the control of an agency is accessed by the agency by use of a personal identifier; not merely that a capability or potential for retrieval exists." [49] By way of example, "an agency recordkeeping system on firms it regulates may contain 'records' (i. e., personal information) about officers of the firm incident to evaluating the firm's performance. Even though these are clearly 'records under the control of' an agency, they would not be considered part of a system as

---

**45.** 5 U.S.C.A. § 552a(d)(1) (Supp.1976).

**46.** *Id.,* (emphasis supplied).

**47.** *Id.,* § 552a(a)(5) (Supp.1976) (emphasis supplied).

**48.** *See Privacy Act Implementation: Guidelines and Responsibilities,* 40 Fed.Reg. 28,948 (July 9, 1975). The promulgation of these guidelines by the Office of Management and Budget was specifically required by section 6 of the Act.

**49.** *Id.,* at 28,952.

defined by the Act, unless the agency accessed them by reference to a personal identifier (name, etc.). That is, if these hypothetical 'records' are never retrieved except by reference to the company identifier or some other nonpersonal indexing scheme (e. g., type of firm) they are not a part of a system of records." [50]

This example aptly illustrates the situation presented in the case at bar. Here, as in the example, the requested items are not accessed by plaintiff's name or other personal identifier. Rather, they are retrievable by someone else's identifier, in particular the name of the agency investigator who prepared them. It follows from this that these reports fall outside the scope of section 3(d)(1) and hence need not be disclosed.

 Plaintiff argues, however, that the Privacy Act regulations are contrary to the intent of the Act and need not be respected. The error underlying this view could not be more basic. "Agency regulations promulgated pursuant to specific congressional authority are presumptively valid and entitled to great deference." [51] *Local 2047 v. Defense General Supply Center,* 423 F.Supp. 481, 485 (E.D.Va.1976). This deference is particularly appropriate where, as here, the regulations "involve a contemporaneous construction of a statute by the [persons] charged with the responsibility of setting its machinery in motion, of making its parts work efficiently and smoothly while they are yet untried and new." [52] *Power Reactor Development Co. v. Electrical Union,* 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1961). The party attacking the regulation carries the burden of "establish[ing] that it is inconsistent with the statute it implements." *Local 2047, supra* at 485. This is an especially weighty burden in the circumstances of this case and, in the Court's judgment, plaintiff has failed to carry it successfully.

**V.** *Disposition.*

For the foregoing reasons, the Court holds that plaintiff's motion for summary judgment must be denied. And for these same reasons, the Court concludes that defendant's crossmotion for summary judgment must be granted. An appropriate order will be issued of even date herewith.

**50.** *Id.*

**51.** *See also Griggs v. Duke Power Co.,* 401 U.S. 424, 433–34, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1968).

**52.** *See also Norwegian Nitrogen Products Co. v. United States,* 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796 (1933).