November 16, 1978

## 78-60 MEMORANDUM OPINION FOR THE COUNSEL, OFFICE OF PROFESSIONAL RESPONSIBILITY

### Federal Bureau of Investigation—Constitutional Law—Fourth Amendment—Privacy Act (5 U.S.C. § 5522)—Acquisition of Private Papers

This responds to your request for our opinion on the legality of the way in which the Federal Bureau of Investigation (FBI) obtained personal papers on the late John Forichette of Hastings, Minnesota, from his cousin, Mrs. Marcella Faltersek, after his death in an automobile accident. Mr. Forichette had openly been a member of the Communist Party of Minnesota, and the papers in question concerned that organization. The Minnesota Civil Liberties Union (MCLU) has complained to Representative Bruce Vento that the FBI's action was unlawful because Mrs. Faltersek lacked authority to dispose of the papers and because it infringed on the First Amendment rights of persons named in them. Representative Edwards, chairman of the House Subcommittee on Civil and Constitutional Rights, forwarded the MCLU's letter to the Office of Professional Responsibility together with a response from the Director of the FBI. He has requested your views on the legality and propriety of the FBI's actions.

This matter raises the following legal issues: First, did the Fourth Amendment permit the FBI to obtain the papers from Mrs. Faltersek? Second, did the Privacy Act, 5 U.S.C. § 552a, or the Attorney General's guidelines implementing that Act, permit the FBI to obtain and copy the papers? After careful consideration of these issues, we have concluded that the FBI's action was authorized by law.

We understand the facts to be as follows: Mr. Forichette was killed in an automobile accident in Hastings, Minnesota, on June 14, 1978. Since Mr. Forichette lived alone, Officer Ritter of the Hastings police entered his house on June 15 to search for the names of next to kin. In the course of the search, he found papers relating to the Communist Party and notified Special Agent Nelson of the FBI. The officer also found the name of Mrs. Faltersek, a cousin of Mr. Forichette, and informed her of his death.

When Mrs. Faltersek arrived at the house on June 15, she told Officer Ritter that she had been designated by Mr. Forichette's closest relatives, an elderly couple, to handle funeral arrangements and take charge of the personal property. She then went through the house and found pamphlets, address books, and other papers connected with Mr. Forichette's Communist Party activities. When she told Officer Ritter that she intended to destroy the material, he suggested that the FBI might be interested and asked if she would be willing to talk to them. Mrs. Faltersek agreed, and Ritter called the FBI to arrange a meeting.

Accordingly, on June 19, 1978, two FBI agents and officers of the Hastings Police Department met with Mrs. Faltersek and her husband outside Mr. Forichette's house. Mrs. Faltersek was told that the FBI was conducting an investigation of the Communist Party and might have an interest in the material maintained within the house. She stated that the FBI was free to take whatever Communist material was maintained in Forichette's residence because she intended to discard it.

Mrs. Faltersek, using a key to the house, admitted the FBI agents, a police officer, and her husband. After entering the house, one of the FBI agents presented a written release to Mrs. Faltersek, which she signed. This release authorized special agents of the FBI to examine all personal effects of John Forichette and to take with them any items they desired. Mrs. Faltersek's signature was witnessed by a police officer and the two FBI agents.

All of the persons present, including Mr. and Mrs. Faltersek, spent approximately 30 to 45 minutes collecting and examining Mr. Forichette's papers. The FBI agents departed with one suitcase and one cardboard box full of miscellaneous documents relating to the Communist Party.

Mr. Forichette died intestate. Mrs. Faltersek was appointed administrator of his estate on September 11, 1978, by the local probate court. The FBI has stated that it will return the original papers to the estate on her written request.

The Communist Party of the United States is the subject of a foreign counterintelligence investigation authorized and conducted under guidelines promulgated by the Attorney General.

In substance, the FBI has borrowed the personal papers of a deceased person from his estate for inspection and copying. The individual who loaned the papers is now the administratrix of the estate; at the time of the loan she was merely the agent of the deceased's next of kin. The first question is whether this transaction is a reasonable seizure under the Fourth Amendment.

Assuming for the moment that the FBI has "seized" the papers,[1] the general issue is whether that seizure is authorized by Mrs. Faltersek's consent. As a

---

[1] The Eighth Circuit has defined a "seizure" as an involuntary dispossession and retention of property under color of authority. *See, United States* v. *Lacey,* 530 F. (2d) 821, 823 (8th Cir. 1977); *Caldwell* v. *United States,* 338 F. (2d) 385, 388 (8th Cir. 1964); *United States* v. *Nicholas,* 448 F. (2d) 622, 624 (8th Cir. 1971); *Wilhelm* v. *Turner,* 431 F. (2d) 177, 179-80 (8th Cir. 1970). Since the FBI has obtained the papers with the consent of Mrs. Faltersek and will return them at her request, we doubt whether the transaction can even be characterized as a "seizure" under the Fourth Amendment.

rule, consent to search premises or seize property may be voluntarily given by one "generally having . . . access or control for most purposes, so that it is reasonable to recognize that [he] has the right to permit the inspection in his own right. . . ." *United States* v. *Matlock*, 417 U.S. 164, 171, n. 7 (1974); *see, Coolidge* v. *New Hampshire*, 405 U.S. 443, 488-89 (1971); *Frazier* v. *Cupp*, 394 U.S. 731, 740 (1969). As owner of the papers,[2] there is no question that Mr. Forichette could have voluntarily disclosed them to the FBI. Mrs. Faltersek did so.[3] The specific question is thus whether she had sufficient authority under the Minnesota law of decedent's estates to act as Mr. Forichette could have.

In Minnesota, the property of an intestate devolves to his heirs at death, subject to administration.[4] The administrator is entitled to possession of all personal property and takes title in trust for the benefit of the estate.[5] The administrator has broad power to dispose of the estate's property, including the power to abandon property he believes to be of no value.[6] In the exercise of his powers, the administrator is a fiduciary for the estate, and any heirs or creditors, may sue for breach of fiduciary duty.[7] The administrator's powers are to be exercised "for the best interests of successors to the estate."[8]

One cannot act as administrator without a court appointment.[9] However, actions taken before an administrator is appointed are not necessarily invalid, for the Minnesota statute provides:

> The duties and powers of a personal representative commence upon his appointment. The powers of a personal representative relate back in time to give acts by the person appointed which are beneficial to the estate occurring prior to the appointment the same effect as those occurring thereafter. . . . A personal representative may ratify and accept acts by others which would have been proper for a personal representative.[10]

The purpose of this provision is to give the administrator authority *nunc pro tunc* from the time of death.[11] The administrator succeeds to the decedent's standing to assert any legal rights which survive death.[12]

---

[2]None of the persons interested in this matter has claimed that Mr. Forichette did not own the papers in question. We note that whether Mr. Forichette was the owner of the papers or merely held them for others, the Fourth Amendment gave the Communist Party and any third persons named in the papers no protected expectation that he would not voluntarily turn them over to the FBI. *See, United States* v. *Miller*, 425 U.S. 435, 440-43 (1976).

[3]No person connected with this case has claimed that Mrs. Faltersek's consent was not free and voluntary.

[4]Minn. Stat. § 524.3-101.

[5]Minn. Stat. § 524.3-709.

[6]Minn. Stat. § 524.3-715(ii).

[7]Minn. Stat. §§ 524.3-703, 524.3-712; *see* Minn. Stat. § 524.1-201(20).

[8]Minn. Stat. § 524.3-703(a).

[9]Minn. Stat. § 524.3-103.

[10]Minn. Stat. § 524.3-701.

[11]*See* Uniform Probate Code § 3-701, comment. The Minnesota statute is identical to the Uniform Act.

[12]Minn. Stat. § 524.3-70(b).

Thus, Mrs. Faltersek essentially had the same relation to the estate's property as Mr. Forichette had when alive, including the power to transfer or abandon it. She was permitted to exercise her power in any way not harmful to the estate, and she was amenable only to its creditors or the heirs for any financial loss her handling of the property incurred. In particular, she could relinquish possession or control of property which she believed to be of no value, subject to the heirs' claim for any loss caused by her misjudgment. That power was deemed by State law to have existed from the time of Mr. Forichette's death.[13] As the person legally authorized to possess and dispose of the estate's property, Mrs. Faltersek had full authority to abandon the Communist Party records. This necessarily included the lesser authority to consent to their permanent, or in this case temporary, removal by the FBI. We therefore conclude that the Fourth Amendment did not prohibit the FBI from accepting the records from Mrs. Faltersek.

The next question is whether the Privacy Act, 5 U.S.C. § 552a, prohibited the FBI from obtaining, analyzing, and retaining copies of the records. As a preliminary matter, we note that only an "individual" has rights and remedies under the Privacy Act; associations have none apart from the separate rights of their members.[14] Further, the Act applies only to collection, retention, and dissemination of information about an individual that is retrievable by name or an equivalent personal identifier.[15] Thus, the Act applies only to the FBI's collection, retention, and use of information concerning individual Communist Party members.

The relevant portion of the Privacy Act is 5 U.S.C. § 552a(e)(7), which provides:

> Each agency that maintains a system of records shall—
>
> * * * * *
>
> (7) maintain no record describing how any individual exercises his rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or *unless pertinent to and within the scope of an authorized law enforcement activity.* [Emphasis added.][16]

The underlined language was added to the statute in a floor amendment sponsored by Representative Ichord. He stated that the purpose of the amendment was to permit the FBI to investigate illegal activity undertaken by

---

[13]We are aware that only authority for acts "beneficial" to the estate relates back before the administrator's appointment. Minn. Stat. § 524.3-701. While we cannot authoritatively construe this question of State law, we believe that it means only that the administrator would be strictly liable for any loss to the estate from these dealings, rather than liable as a fiduciary under the "prudent man" rule. *Cf.*, Minn. Stat. § 524.3-703(a).

[14]*See* 5 U.S.C. §§ 552a(2), (4), (c)(3), (d), (e)(1)-(3), (5)-(8), (f), (g); *Am. Federation of Government Employees, Local 2047* v. *Defense General Supply Center,* 423 F. Supp. 481 (E.D. Va. 1976).

[15]5 U.S.C. § 552a(a)(4)-(5).

[16]The FBI Central Records System (Justice/FBI 002) has been exempted from the provisions of 5 U.S.C. § 552a(e)(1). *See* 5 U.S.C. 552a(k)(2); 43 F.R. 44694 (Sept. 28, 1978).

262

the Communist Party and similar organizations under the guise of political activity protected by the First Amendment. He further stated that the amendment was not intended "to hurt in any way the exercise of the first amendment rights."[17] Thus, 5 U.S.C. § 552a(e)(7) permits the FBI to maintain a record of an individual's activities relating to the First Amendment when, but only when, those activities are involved in conduct which is the subject of an otherwise authorized law enforcement investigation by the FBI.

In our view, the FBI has complied with subsection (e)(7) in this case. Investigation of the Communist Party has been specifically authorized by the Attorney General as a foreign counterintelligence investigation under 28 U.S.C. § 533(3), Executive Order No. 12036, §§ 1-1401, 2-208(j), 4-202, and the Attorney General's procedures for the conduct of such investigations.[18] To date, the FBI has not opened or initiated any new individual files on the basis of the Forichette papers. The material is being evaluated, and individual investigations will be undertaken only if authorized under the Attorney General's procedures or if other possible violations of law are revealed. These investigations would be duly authorized, and the maintenance of records on the association of individuals concerned with the Communist Party would be permitted if pertinent to the investigation.[19]

To summarize, the FBI is conducting its investigation of the Communist Party as a foreign counterintelligence investigation under appropriate authority. In the course of this investigation, Mrs. Faltersek voluntarily provided the FBI with temporary use of papers relating to the Communist Party which were lawfully in her possession and which, under the law of Minnesota, she had the authority to abandon entirely. The Fourth Amendment permits the FBI to acquire the papers in this manner. Since the papers concern associational activity protected by the First Amendment, the Privacy Act permits the FBI to maintain retrievable records of individuals mentioned in them only when pertinent to and within the scope of the authorized investigation of the Communist Party. Insofar as we are aware, the FBI intends to proceed accordingly.

MARY C. LAWTON
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[17]120 Cong. Rec. 36957 (1974); *see also* 120 Cong. Rec. 36644 (Representative Moorhead), 36650 (Representative Ichord).

[18]Representative Ichord stated that he was using the term "law enforcement" in its broadest sense, to include legitimate "national or internal security investigations" authorized by statute or Executive order. 120 Cong. Rec. 36651 (1974).

[19]The Privacy Act notice for the FBI Central Records System (Justice/FBI 002) states: "It should be noted that the FBI does not index all individuals that furnish information or names developed in an investigation. Only that information that is considered pertinent and relevant and essential for future retrieval, is indexed." 43 F.R. 44693 (Sept. 28, 1978).