**Henry M. THOMPSON and Raymond H. Foresman, Plaintiffs,**

v.

**DEPARTMENT OF TRANSPORTATION UNITED STATES COAST GUARD, Defendant.**

**No. 80–1686–Civ–SMA.**

United States District Court,
S. D. Florida,
Miami Division.

April 6, 1982.

**276**

Neil Flaxman, Coral Gables, Fla., for plaintiffs.

Stanley Marcus, U. S. Atty. by Lloyd G. Bates, Jr., Asst. U. S. Atty., Miami, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ARONOVITZ, District Judge.

THIS CAUSE came on for trial before the Court without a jury on the Plaintiffs' two-count Third Amended Complaint based on alleged violations by the Defendant of the Privacy Act of 1974, 5 U.S.C. § 552a. In Count I the Plaintiffs seek damages for alleged violations of the Privacy Act by the Defendant in collecting and maintaining information concerning each of them, and in Count II seek amendment and correction of certain records relating to them. The Plaintiffs also seek attorneys' fees and injunctive relief requiring the Defendant to maintain records in accordance with the Privacy Act. The Court having considered the pleadings, the testimony of the witnesses, the exhibits, stipulations and argument of counsel, and the applicable law, and being otherwise fully advised in the premises, hereby enters Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Plaintiff Henry M. Thompson became employed on July 1, 1975, as a Diesel Engine Mechanic, W–G 10 (Wage Grade 10), at the United States Coast Guard's Base Miami Beach engine shop. (Plaintiffs' Ex. 51.)

2. Plaintiff Raymond H. Foresman became employed at said engine shop on February 21, 1978, as a Diesel Engine Mechanic Helper, W–G 3. (Wage Grade 3, increased to W–G 5 on March 26, 1978). (Plaintiffs' Ex. 16.)

3. The function of said engine shop included the repair and overhaul of engines of the ships of U.S. Coast Guard to maintain their good operating condition.

4. The engine shop had about 5–6 civilian employees. The shop leader who at all times pertinent was the immediate supervisor of said employees was Joseph Gollattscheck. Gollattscheck's supervisor was Edward Bateman, Foreman, who also had supervision of the machine shop. George L. McCullar, Bateman's supervisor, was the General Foreman at Base Miami Beach. The Industrial Manager at Base Miami Beach was Lt. Commander J. A. Shepherd until about July, 1978, when he was succeeded by Lt. Commander Myron Tethal.

5. Andrew P. Backs was Chief Personnel Officer of the U.S. Coast Guard with offices in the Federal Building, Miami, Florida. Backs maintained the civilian employees' official personnel files (OPF). (Plaintiffs' Ex. 66.) Backs' duties included the preparation of notices of proposed suspension of civilian employees, the review of information offered by a superior proposing such adverse action, and the establishment of disciplinary files containing information to support the adverse action.

6. The Coast Guard maintained and secured at Base Miami Beach in the office of the Industrial Manager an employee record card referred to as a Standard Form 7–B card (7–B). The 7–B card was initially prepared in the civilian personnel office when a new employee entered on duty. It was then taken by the new employee to his duty station. It was used by the employee's supervisor as a basis for initiating personnel action; recording personnel action, training and qualifications; noting discussions, reprimands and other matters pertinent to the personnel job of the supervisor. It is an approved working tool of the supervisor. (Plaintiffs' Exs. 2 and 66.)

7. Shop leader Gollattscheck kept a record of labor charges to work orders handled by his shop in a book which he kept on his desk. (Plaintiffs' Ex. 67.)

8. Gollattscheck also kept in a portion of the book separated from that portion relative to accountability of labor charges, so-called memory aids by which he documented out-of-the-ordinary job related conduct of various employees under his supervision. (Plaintiffs' Exs. 6 and 7.)

9. It was Gollattscheck's intent in keeping memory aids to use them in performing his function as a supervisor, and in keeping them in an obscure location in the shop book that they not be seen by others than himself. On occasion when the need for a particular memory aid ended he destroyed such memory aid. He began keeping a memory aid when an employee indicated a pattern of conduct that was, or might become, detrimental to the employee's job performance and the shop's work assignments.

10. In September 1979, Howard Harris, an employee who was acting Leader in Gollattscheck's absence for the day, looked through the shop book and discovered Gollattscheck's memory aids which he examined and then brought them to the attention of the other employees including plaintiffs.

11. The employees, on September 12, 1979, with the assistance of a representative of the National Federation of Federal Employees, Local 1485, arranged a meeting with management represented by Tethal and McCullar, concerning the notes in Gollattscheck's shop book. Tethal stated that these were the private, personal notes, or memory aids of Gollattscheck, and that supervisors generally kept such notes concerning individuals under their supervision in order to perform their supervisory function.

12. Backs, the civilian personnel officer, upon being informed of the incident concerning Gollattscheck's shop book, advised that Gollattscheck's memory aids be attached to the employees' 7–B cards, since the confidentiality of said notes had been compromised. This was evidently done soon after the said meeting. In piecing together those portions of said notes that applied to Plaintiff Foresman it appears that an entry dated August 27, 1979, concerning "Hank and Kelvin" was inadvertently included in the attachment to Plaintiff Foresman's 7–B card. (Plaintiffs' Ex. 7.)

13. Both Plaintiffs, Thompson and Foresman, developed patterns of conduct

which were disruptive of the work schedule at the engine shop and were counselled by their supervisors concerning such conduct at various times.

14. Thompson's conduct which required counselling centered around abuse of alcohol and abuse of leave. Because of such conduct an adverse action was commenced against Thompson in early 1978 by a Notice of Proposed Suspension for ten (10) workdays. (Plaintiffs' Ex. 17.) This action was supported by documentation in the form of memoranda and notes made by Thompson's supervisors contemporaneously with the conduct observed. (Plaintiffs' Exs. 22, 23, 24, 25, 26, 52.) These documents were attachments to the 7–B card and became part of a disciplinary file established in Backs' office as support for the proposed adverse action. Thompson did not contest this action, and a suspension for ten (10) workdays commencing April 30, 1978 was entered. (Plaintiffs' Ex. 18.) A SF50–Notice of Personnel Action was placed in the permanent portion of Thompson's OPF reflecting this suspension.

15. Thompson's work performance fell below acceptable levels and faced with an unsatisfactory rating for the period July, 1978—July, 1979, he was given the opportunity to correct his deficiencies by a so-called ninety (90) day warning which, in addition to detailing the unsatisfactory areas of work performance, also detailed the dates and events upon which the warning was based. (Plaintiffs' Ex. 21.) A ninety (90) day warning is rehabilitative rather than punitive. It appears that Thompson corrected his deficiencies during the warning period and he received a satisfactory rating for the rating period in question. The ninety (90) day warning was supported by documentation in the form of contemporaneously made notes of his supervisors. (Plaintiffs' Exs. 33, 33a, 34.)

16. Foresman's conduct, which required counselling, centered around problems with leave procedures and a belligerent attitude. Documentation of such conduct in the form of notes of supervisors, including Gollattscheck's memory aids, became attachments to Foresman's 7–B card. (Plaintiffs' Exs. 4, 5, 6, 7, 11, 12, 13, 14.) An attempted counselling session on January 4, 1980, concerning leave procedures resulted in Foresman being advised on said date that he would be charged with insubordination. (Plaintiffs' Ex. 10.) Subsequently, on March 10, 1980, a Notice of Proposed Suspension for ten (10) days was issued. (Plaintiffs' Ex. 1A.) Thereafter, Foresman viewed his OPF and the disciplinary file in Back's office and received copies of all documentation supporting the proposed suspension including the attachments to the 7–B card. The disciplinary file was established in early 1980 at the time of the proposed adverse action. Foresman filed a formal grievance on January 16, 1980, under the negotiated agreement between NFFE Local 1485 and the Coast Guard, which grievance was decided adversely to Foresman by Tethal. (Plaintiffs' Ex. 1.)

17. On March 31, 1980, Foresman filed a reply to the Notice of Proposed Suspension. (Plaintiffs' Ex. 1B.) On June 6, 1980, the deciding official imposed a ten (10) day suspension effective June 16, 1980. (Plaintiffs' Ex. 2.) Foresman sought no review therefrom. A SF50 reflecting this suspension is a permanent part of Foresman's OPF.

18. Thompson's problems with alcohol and abuse of leave procedures, which became dormant for a few months following the ninety (90) day warning, again surfaced in early December, 1979, following a work assignment in Key West. On January 2, 1980, following several instances of these problems, Thompson was counselled concerning these problems and that disciplinary action would have to be taken. (Plaintiffs' Ex. 53A, 53B, 53C.) There followed a Notice of Proposed Suspension for twenty (20) days dated March 18, 1980, charging unauthorized absence. (Plaintiffs' Ex. 19.) As in Foresman's case, Thompson requested, and was permitted, to view and copy his OPF and disciplinary file which had been established in early 1980, when the adverse action was being considered. Other than this request, and written request to Bate-

man and Gollattscheck dated March 27, 1980 (Plaintiffs' Exs. 49, 50, 50A), Thompson had made no prior requests concerning any records pertaining to him.

19. Thompson, under date of March 24, 1980, replied to this proposed suspension. (Defendant's Ex. 5.) The deciding official on the basis of the record made imposed the proposed twenty (20) day suspension effective June 18, 1980. On Thompson's appeal therefrom the Merit Systems Protection Board (MSPB) entered a decision reducing the suspension to two (2) days. (Plaintiffs' Ex. 54.) The matter is still pending before the MSPB. A SF50 was placed in Thompson's OPF.

20. On October 23, 1980, Thompson was the subject of a Notice of Proposed Removal because of abuse of alcohol and of leave procedures. (Defendant's Ex. 6.) Documentation in the form of supervisor's notes which appear to have become attachments to the 7–B card provided support for the proposed action. (Plaintiffs' Exs. 40, 41, 42, 43, 44, 45, 46.) Thompson's reply to the notice essentially agreed with the recital of events, recognized his problem with alcohol, and asked for another chance. (Defendant's Ex. 7.) In response to this request the deciding official conditionally postponed the proposed removal. (Defendant's Ex. 8.)

21. On June 16, 1981, Thompson was again subject of a Notice of Proposed Removal, on this occasion being charged with (a) unauthorized absences on February 5 and February 6, 1981; and (b) falsification of attendance record for said dates. (Plaintiffs' Ex. 54a.) Thompson replied to this notice on July 14, 1981. (Plaintiffs' Ex. 54B.) On September 3, 1981, the deciding official reached a decision on the basis of the record to remove Thompson effective September 4, 1981. (Plaintiffs' Ex. 54C.) A SF50 reflecting this personnel action was placed in his OPF.

22. On April 1, 1980, Plaintiffs, by letter addressed to McCullar, initiated through their attorney an exchange of correspondence dealing with "written memorandums, documents and statements" kept by the agency concerning the Plaintiffs. (Plaintiffs' Ex. 55.) Said letter requested as follows:

In accordance with the Privacy Act of 1974, more specifically Section 2 (B) (1), I am requesting on behalf of such individuals the following information:

1. Specifically what records were collected, maintained, used or disseminated concerning such individuals.

2. The date such records were collected, maintained, used or disseminated.

3. Whether or not any such records were destroyed.

In addition, I am requesting in accordance with the Privacy Act of 1974, the names and positions of every such person compiling such records, destroying such records or disseminating such records. In addition, we are hereby requesting that any and all records kept of the aforestated individuals conform with requirements of the Privacy Act of 1974.

23. On April 11, 1980, Backs replied as follows:

Records of Messrs. Foresman and Thompson are kept in their Official Personnel Folders maintained in the District Civilian Personnel Office. Additionally, supervisors maintain, as a working tool, Standard Form 7B which may include attachments. These files have been made available to Messrs. Foresman and Thompson.

To my knowledge, no records have been destroyed or further disseminated. If you can be more specific, we will be pleased to investigate further. I wish to assure you of our complete cooperation in your representation efforts in behalf of Messrs. Foresman and Thompson. Feel free to contact us at any time. (Plaintiffs' Ex. 56.)

24. Plaintiffs' attorney on April 21, 1980, replied to Back's letter of April 11, 1980, as follows:

You mentioned in your letter of April 11, 1980 that Supervisors maintain as a working tool, Standard Forms 7B which may include attachments. It is our understanding that these attachments

have been kept in secret files and further have been used in evaluating Mr. Foresman and Mr. Thompson and as the basis for issuing charges against them.

We would appreciate it if you would advise us where the attachments are currently located, whether any of such attachments have been destroyed or disseminated to others. (Plaintiffs' Ex. 57.)

25. Backs, in response thereto by letter dated April 29, 1980, stated as follows:

Standard Form 7B cards and their attachments are not secret files. Copies of 7B cards and all such attachments have been given to Mr. Foresman and Mr. Thompson. No attachments have been destroyed or disseminated to others. They are all located in the Industrial Office at Base Miami Beach.

If we can be of any further assistance, feel free to contact us at any time. (Plaintiffs' Ex. 58.)

26. Subsequent to suit being filed Plaintiffs' attorney resumed the correspondence with Backs by letter dated April 7, 1981, as follows:

It appears that there is being kept in your office a permanent disciplinary file on Mr. Foresman and Mr. Thompson. The disciplinary file contains so-called memory aids that have been used for the purpose of disciplinary action.

Mr. Foresman and Mr. Thompson, through this office, are requesting that any and all memorandum or written documents supporting any disciplinary action that has been finally concluded be removed from said file and destroyed, since the keeping of said so-called memory aids would serve no purpose but would be detrimental to Mr. Foresman and Mr. Thompson.

In addition, it has been discovered that certain written documents referred to as memory aids are part of Mr. Thompson's 7B File, and since, at this date, they serve no purpose, such so-called memory aids should be removed and destroyed.

All the aforegoing is in accordance with the Privacy Act of 1974, and we would appreciate it if you would advise us of the action you plan to take in accordance with this request. (Plaintiffs' Ex. 62.)

27. Backs replied by letter dated April 22, 1981, advising that he had been instructed to refer all correspondence regarding the case to the U.S. Attorney's Office. (Plaintiffs' Ex. 63.)

28. On September 21, 1981, Backs provided a response to the letter of April 7, 1981, as follows:

Commandant Instruction M 12750.3 Chapter 4, paragraph A (enclosure 1) requires that this office maintains a support file containing all original documentary evidence relevant to the action being prepared. This includes the proposed action; the employee's reply, and all documents submitted with the written answer; the decision and material in support of the action. The requirement to keep such records are also contained in FPM Supplement 752–1 (enclosure 2). If we can furnish additional information, feel free to contact us. (Plaintiffs' Exs. 64, 64a, 64b.)

29. Backs maintained support or disciplinary files in his office concerning both Plaintiffs in accordance with pertinent regulations and administrative instructives such as DOT Order No. 3770.1A (Defendant's Ex. 4), at least while an adverse action or litigation is pending.

30. Neither Plaintiff was denied advancement at the engine shop. In Thompson's case the only opportunity for advancement arose when Gollattscheck left in April, 1980. Robert Cutler was selected to fill the shop leader position over Thompson because upon testing he graded out higher than Thompson. In Foresman's case, budgetary constraints have prevented advancement to Diesel Engine Mechanic. McCullar and Bateman attempted to create a WG–8 position so as to advance Foresman, but said constraints have evidently prevented this.

31. It is not the Court's duty to try or to make a determination upon the disciplinary charges against the Plaintiffs. However, in reviewing the underlying facts which form the basis for the disciplinary actions, as

these facts relate to the Plaintiffs' requests to amend their records, the Court finds that insofar as the records relate to Plaintiff Thompson, the evidence is overwhelming in terms of the nature and frequency of said Plaintiff's problems relating to abuse of alcohol and leave procedures, and the records accurately reflect these circumstances. With regard to Plaintiff Foresman, although the evidence is not as overwhelming, the Court concludes that the memory aids, which later became 7–B card attachments and a part of the Plaintiff's disciplinary file, were not so inaccurate, untimely, or otherwise deficient as to warrant amendment of Plaintiff Foresman's disciplinary file. These findings are not made in the context of disciplinary actions against the Plaintiffs, but only in the context of determining whether the Plaintiffs are entitled to the relief they seek in their Complaint.

32. Although a vocational consultant testified that the earning capacities of both of the Plaintiffs were diminished by the adverse materials in their records, the Court does not find the witness' testimony credible as to these two Plaintiffs. The witness testified that as to Plaintiff Foresman, he was unaware of and had not considered the fact that there were no positions available in the engine shop to which Plaintiff Foresman could be promoted. As to Plaintiff Thompson, the witness was unaware of and had not considered Plaintiff Thompson's problems relating to alcohol abuse, and the events and reasons surrounding his removal from employment.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties to this action. Subject matter jurisdiction exists pursuant to 5 U.S.C. § 552a(g)(1).

2. The Privacy Act, 5 U.S.C. § 552a, *et seq.,* sets forth requirements and procedures which federal agencies must follow in compiling and maintaining any "system of records" as that term is defined in § 552a(a)(5). The Plaintiffs seek judicial review of the Defendant's decision not to amend their disciplinary support files, pursuant to § 552a(g)(1)(A), and they further claim that the Defendant violated the Privacy Act in the following particulars:

(a) By failing to maintain the employee records with such "accuracy, relevance, timeliness, and completeness as is necessary to assure fairness" to the Plaintiffs in the employment determination made and actions taken based on the records (§ 552a(e)(5) and 552a(g)(1)(C));

(b) By failing to advise the Plaintiffs of the procedures established by the Coast Guard (at 49 C.F.R. § 10.85, Appendix C 1981) to review a denial of a request to amend records and of the requester's right to judicial review (§§ 552a(d)(2), (3) and 5 C.F.R. § 297.306(d) (1981));

(c) By failing to provide an annual notice to all employees of the employees' right to review personnel records relating to the employee that are maintained in a system of records covered by the Act (5 C.F.R. § 297.409 (1981)).

3. Section 552a(g)(1) of the Privacy Act provides as follows:

(g)(1) Civil remedies.—Whenever any agency

(A) makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection;

(B) refuses to comply with an individual request under subsection (d)(1) of this section;

(C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or

(D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual,

the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

4. Under § 552a(g)(2)(A), the Court may order the agency to amend the individual's record in accordance with his request or in such other way as the Court may direct. Congress has provided in this section that "the court shall determine the matter de novo."

5. Section 552a(g)(4) provides that in suits brought under §§ 552a(g)(1)(C) or (D) (set forth above), if the Court determines that the agency's failure to maintain the records in accordance with the Act (or any other agency violation of the Act) was intentional or willful, the United States shall be liable to the individual for actual damages sustained by the individual, but the individual shall in no case receive less than $1,000.00.

*The Claim for Amendment of the Records*

■ 6. In exercising its de novo review under § 552a(g)(2)(A), the Court does not view its role as one of trying the facts underlying the disciplinary allegations against the Plaintiffs or rendering a decision declaring the Plaintiffs innocent or guilty of the conduct alleged. *See Doe v. Civil Service Commission,* 483 F.Supp. 539, 578 (S.D.N.Y.1980). Rather, the Court's role is to make an independent determination whether the amendment request should be denied on the basis of the evidence that was available to the agency and any supplemental evidence presented to the Court. *Id.* A determination as to amendment or expungement must be made with close attention to the facts, so as to "effect a proper reconciliation of the competing interests of the Government in retaining information relevant to job performance, and of the individual in having it forgotten." *Chastain v. Kelley,* 510 F.2d 1232, 1236 (D.D.C.1975); *see Paton v. La Prade,* 524 F.2d 862, 868 (3d Cir. 1975). The factors the Court should examine include the accuracy and adverse nature of the information;

the availability and scope of dissemination of the records; the procedures established for retention and eventual destruction of the records; the legality of the methods and procedures by which the information was compiled, and whether these methods and procedures were flawed; the existence of statutes and/or regulations authorizing the compilation and maintenance of the records and prohibiting their destruction; the value and relevancy of the records to the Government; the degree of possibility that denial of the request could result in unfair determinations adverse to the individual; the character of the records sought to be amended; and the possible involvement of the records in judicial or quasi-judicial proceedings. *Paton v. La Prade, supra,* 524 F.2d at 869; *Chastain v. Kelley, supra,* 510 F.2d at 1236; 5 C.F.R. § 297.307(a) (1981). Where an individual seeks amendment of records, the ordinary rule imposing the burden of proof on the plaintiff should apply. *Mervin v. Federal Trade Commission,* 591 F.2d 821, 827 (D.C.Cir.1978).

■ 7. The Court heard the witnesses testify at the trial, including the Plaintiffs and supervisors Tethal, McCullar, Bateman and Gollatscheck, and observed the demeanor of the witnesses and made evaluations as to their credibility. The Court has considered all of the above-named factors as they relate to the memory aids that now exist in the Plaintiffs' disciplinary files. Having considered all of the foregoing, the Court concludes that both Plaintiffs have failed to meet their burden of proof, and that amendment or expungement of their disciplinary support files is not necessary or appropriate. As previously noted, the Court has concluded that the records are not inaccurate, untimely, or otherwise deficient such that an order requiring their amendment is necessary or appropriate. Adequate and sufficient safeguards and procedures exist such that access to the disciplinary files is restricted to authorized persons who have occasion to use them in the course of their official duties. Coast Guard and other federal procedures and regulations were followed in the compila-

tion and maintenance of these disciplinary files, and in fact such regulations require that the files be retained when a disciplinary action is pending. The records are of great value and relevancy to the Coast Guard in making fair and accurate determinations with regard to disciplinary matters. Coast Guard and other federal procedures and regulations established and followed in making determinations as to disciplinary actions against employees include substantial safeguards to protect employees against unfair adverse determinations.

■ 8. In determining whether some or all of the memory aids should be expunged from the Plaintiffs' disciplinary support files, the Court has also considered whether these files were compiled and maintained with such accuracy, relevance, timeliness and completeness as was necessary to assure fairness to the Plaintiffs in the determinations made. These are the criteria set forth by Congress in §§ 552a(e)(5) and 552a(g)(1)(C) of the Act. The Plaintiffs' arguments focus on the accuracy and timeliness requirements. With regard to the accuracy requirement, each Plaintiff has failed to establish inaccuracy relating to the matters set forth in the memory aids contained in the respective disciplinary support files. With regard to timeliness, the Plaintiffs argue that the memory aids in the disciplinary support files constitute untimely records because although the memory aids refer to events occurring from January, 1978, they were not attached to the 7–B cards until some time in late 1979 and/or January, 1980, after some of them were discovered in the shop time book and just prior to the proposal of disciplinary actions against the Plaintiffs in March, 1980. The Court finds this argument to be without merit. The Plaintiffs do not contend that the Privacy Act applies to memory aids kept by the supervisors solely for counselling or evaluation purposes as a part of their managerial and supervisory duties. Throughout this proceeding, the Plaintiffs have conceded that the supervisors had the right to make and maintain such personal notes or memory aids and that they are not a "system of records" covered by the Privacy Act. Plaintiffs contend, however, that the supervisor must determine contemporaneously with making the memory aid whether it will be relied on at any time in the future as a basis for adverse disciplinary action. If the memory aid might become the basis for adverse disciplinary action, the Plaintiffs contend, it must be placed in a "system of records" to which the Privacy Act applies and to which the employee has access, so that the employee can immediately gather evidence to counter the adverse effect of the memory aid. The Court does not accept this contention. The Court concludes that Congress did not intend to impose such a requirement through the Privacy Act. Section 552a(e)(5) of the Act requires that agencies maintain a system of records with such accuracy, relevance, timeliness and completeness as is *reasonably* necessary to assure fairness to the individual in any determination made about him based on the records. As one Court has observed of the requirements of § 552a(e)(5):

> [D]uties based on the criterion of "reasonableness" are determined through the process of balancing all of the relevant competing interests at stake. In the context of the Privacy Act, this balancing requires consideration of both agency resources and the ability of federal agencies to assure accurate and complete records as well as the likelihood that inaccurate and incomplete records will cause injury to the subject individual.

*Smiertka v. Department of Treasury,* 447 F.Supp. 221, 226 n.35 (D.D.C.1978), *remanded on other grounds,* 604 F.2d 698 (D.C.Cir. 1979).

■ 9. The Court further concludes that the timeliness requirement of § 552a(e)(5) is met where, as here, any materials upon which the adverse disciplinary action is based are placed in the appropriate "system of records" (i.e., the 7–B card file and/or the disciplinary support files) contemporaneously with or within a reasonable time after an adverse disciplinary action is proposed. In the case *sub judice,* the memory aids were attached to the Plaintiffs'

7–B cards in late 1979 and early 1980, prior to the time adverse disciplinary actions were proposed in March, 1980. Disciplinary support files relating to each Plaintiff were opened contemporaneously with the proposal of adverse disciplinary actions. The Plaintiffs were allowed access to the files and the opportunity to make copies of the materials therein so that they could formulate replies to the charges against them. Both Plaintiffs availed themselves of this opportunity, and their replies were placed in the files and considered in the determination made. The 7–B card files and disciplinary support files, which are "systems of records" covered by the Privacy Act, were thus maintained with such timeliness as was necessary to assure fairness to the Plaintiffs in the determinations made.

### The Claim for Damages

■ 10. Section 552a(g)(4) of the Act provides:

(4) In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—

(A) actual damages sustained by the individual as a result of the refusal or failure but in no case shall a person entitled to recovery, receive less than the sum of $1,000; and

(B) the costs of the action together with reasonable attorney fees as determined by the court.

11. As has been discussed in paragraphs eight (8) and nine (9) of these Conclusions of Law, *supra,* the Court concludes that the Plaintiffs have failed to establish a violation under the accuracy, relevancy, timeliness and completeness requirements of § 552a(g)(1)(C). Accordingly, there is no

basis for an award of damages under § 553a(g)(1)(C).

■ 12. Under § 552a(g)(4)(A), damages may also be awarded when an agency violates § 552a(g)(1)(D) by failing to comply with any other provision of § 552a, or any rule promulgated thereunder, in such a way as to have an adverse effect on the individual. The Plaintiffs claim that the Defendant violated the Act's requirement that when an individual's request for amendment of records is denied, the individual be advised of the procedures established by the agency to review the denial and the right to judicial review. 552a(d)(2)(B)(ii), (3); 5 C.F.R. § 297.306(d) (1981). The Court finds no basis upon which to award damages based on this claim, however. The Plaintiffs herein did not request amendment of their disciplinary support files until April 7, 1981 (Plaintiffs' Exhibit No. 62), eight (8) months after the initiation of this lawsuit, and well after they had retained counsel.[1] Although it appears that the Plaintiffs were not formally notified by Coast Guard officials of their right to agency and judicial review after their request was denied, the Coast Guard procedure for request and review is set forth at 49 C.F.R. § 10.85, Appendix C (1981), and these rights are clearly set forth in the Privacy Act itself. The fact that Plaintiffs were represented by counsel and had already filed the instant lawsuit establishes that they were aware of their right of review. Therefore, the failure of Coast Guard officials to advise the Plaintiffs of their right to review had no adverse effect on them, and thus does not provide a basis for an award of damages under § 552a(g)(1)(D).

■ 13. The Plaintiffs claim that the Defendant violated 5 C.F.R. § 297.409 (1981), which provides:

§ 297.409 Annual notice to employees.

---

1. The Plaintiffs claim that the meeting between the employees and management, held on September 12, 1979, constituted a request to amend the records. They also claim that replies they filed to the proposed disciplinary actions, which raised Privacy Act arguments, constituted requests to amend the records. The Court finds insufficient evidence to support a finding that amendment of the records was sought at the meeting, and, moreover, neither the meeting nor Plaintiffs' replies asserting Privacy Act arguments are sufficient to constitute a request for amendment of the records under § 552a(d)(2) of the Act. *See* 49 C.F.R. § 10.85, Appendix C (1981).

Agencies must provide, at the individual's request, an opportunity for an individual to review automated and manual personnel records that are maintained in a system of records and concern the individual. Agencies, at least annually, must announce this opportunity to request access to such records by a notice that reaches all employees.

Any violation of this requirement by the Defendant did not adversely affect the Plaintiffs and is therefore not a basis for an award of damages. The purpose of this requirement is to ensure that employees have knowledge of their right to have access to their personnel records as provided under the Privacy Act. The Plaintiffs gained access to their disciplinary support files in March, 1980, shortly after these files were opened. These files contained copies of all memory aids upon which the proposed disciplinary actions were based. The Plaintiffs reviewed and obtained copies of these materials and used these to formulate replies to the proposed disciplinary actions. The Plaintiffs were not denied access to their records by any failure of the Defendant to advise them of their right to access. The Court would observe, however, that in order to ensure full compliance in the future with the Act and regulations promulgated thereunder, the Defendant should institute some form of annual notice to employees, by posting in conspicuous places or otherwise, which apprises employees of the various personnel records concerning them that are maintained, and their opportunity to review such records.

14. Even if the Plaintiffs had been adversely affected by any failure of the Defendant to strictly comply with the requirements of the Act or any regulations promulgated thereunder, damages may only be recovered when the agency acted in a manner which was intentional or willful. Sect. 552a(g)(4). "On a continuum between negligence and the very high standard of willful, arbitrary, or capricious conduct, this standard is viewed as only somewhat great-

er than gross negligence." *Parks v. Internal Revenue Service,* 618 F.2d 677, 683 (10th Cir. 1980); *South v. Federal Bureau of Investigation,* 508 F.Supp. 1104, 1107–08 (N.D. Ill.1981); *Analysis of House and Senate Compromise Amendments to the Federal Privacy Act, reprinted in* 120 Cong.Rec. 40405, 40406 (1974); *Congressional Record—Senate* S.21817 (Dec. 17, 1974).

15. The Court concludes that the Plaintiffs have failed to show intentional or willful acts on the part of the Defendant as defined above, and thus, damages under § 552a(g)(4) are not recoverable. The Plaintiffs claim that the Defendant acted intentionally and/or willfully when the Defendant failed to notify the Plaintiffs that the memory aids were being attached to the employees' 7–B cards in late 1979 and early 1980. The Privacy Act imposes no requirement, however, that individuals be advised each time an entry pertaining to them is made in a system of records. Such a requirement would be unreasonable and unduly burdensome. In the context of the Privacy Act, the necessary balancing of interests requires consideration of agency resources as well as the interests of the individual. *See Smiertka v. Department of Treasury, supra,* 447 F.Supp. at 226 n.35; [1974] U.S.Code Cong. & Ad.News 6916, 6974 (individual notification would be too costly; congressional committee relied instead on initiative of concerned individuals to learn whether they are the subject of government files).

16. The Plaintiffs also claim that the Defendant acted intentionally and/or willfully when Lt. Cmndr. Tethal responded to Union President Miller's request to destroy outdated counselling records by stating that employee files had been inspected and outdated entries had been destroyed, when the memory aids remained in the disciplinary support files.[2] The Court concludes, however, that Lt. Cmndr. Tethal's response was a reasonable, adequate and sufficient response to the request. The Coast Guard regulation requiring destruc-

---

2. On June 9, 1980, Evans Miller, the President of NFFE Local 1485, requested in a letter to Lt. Cmndr. Tethal that counselling records ("mem-

ory aids") older than one year be destroyed pursuant to a Coast Guard regulation requiring that such records be destroyed after a period of

tion within one (1) year applies only to counselling records, and not to materials in disciplinary support files, which under Coast Guard and other regulations must be retained while a proposed disciplinary action is pending or on appeal. Moreover, the disciplinary files are maintained at the personnel office and not at Base Miami Beach, and Lt. Cmndr. Tethal had no duties or authority relating to maintenance of the disciplinary files. The request by Union President Miller raised a labor-management matter and was received and answered in that context by Lt. Cmndr. Tethal. The request did not in any way invoke the Privacy Act, nor was it received or answered in the context of the Privacy Act Lt. Cmndr. Tethal did not intentionally or willfully mislead the Plaintiffs by his response.

17. In view of all of the aforegoing, the Court concludes that neither Plaintiff is entitled to amendment or expungement of his disciplinary support file or to money damages. An appropriate Final Judgment in favor of the Defendant shall be entered under even date herewith.

one year. (Plaintiffs' Ex. 47.) On September 11, 1980, Lt. Comndr. Tethal replied to the letter stating that "[a] thorough inspection of employee files has been conducted and all outdated entries or records have been removed and destroyed." (Plaintiffs' Ex. 48.) The Plaintiffs subsequently checked their 7–B cards and ascertained that the memory aid attachments had been removed therefrom, but during discovery, Plaintiffs became aware that copies of the memory aids still existed in the disciplinary support files in the personnel office as support material for the disciplinary actions taken against them.