**Alan R. SMIERTKA, Appellant,**

v.

**UNITED STATES DEPARTMENT OF the TREASURY, INTERNAL REVENUE SERVICE, et al.**

**No. 78–1472.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 20, 1979.

Decided Aug. 7, 1979.

William E. Persina, Associate Gen. Counsel, National Treasury Employees Union, Washington, D. C., with whom Robert M. Tobias, General Counsel, National Treasury Employees Union, Washington, D. C., was on brief, for appellant.

R. Bruce Johnson, Atty., Dept. of Justice, Washington, D. C., with whom M. Carr Ferguson, Asst. Atty. Gen., and Earl J. Silbert, U. S. Atty., Washington, D. C., were on brief, for appellee.

Before BAZELON, Senior Circuit Judge, ROBINSON, Circuit Judge and VAN DUSEN,* United States Senior Circuit Judge for the Third Circuit.

Opinion for the Court filed by Senior Circuit Judge VAN DUSEN.

VAN DUSEN, Senior Circuit Judge:

Plaintiff-appellant, Alan R. Smiertka, filed this action under the Privacy Act, 5 U.S.C. § 552a (1977), seeking access to documents held by the defendant-appellee, Internal Revenue Service. The district court, on February 16, 1978, entered summary judgment for defendant, in part on the basis of § 3(d)(5) of the Act, 5 U.S.C. § 552(d)(5), which exempts "information compiled in reasonable anticipation of a civil action or proceeding" from the Act's access requirements. This appeal raised the narrow issue of whether the § 3(d)(5) exemption embraces materials compiled in anticipation of adversary administrative proceedings, or only those compiled for litigation in a judicial forum. However, intervening events not brought to the attention of the district court have changed the factual context of the issue here presented. Therefore, we vacate the judgment and remand for a further determination of the pertinent facts and of the law applicable thereto.

## I.

The background facts in this controversy are not disputed. Plaintiff Smiertka was a special agent for the defendant Internal Revenue Service ("IRS" or "agency") in its Detroit district office until July 16, 1975, when he was dismissed on charges of misconduct. Having contested his discharge unsuccessfully before the IRS,[1] plaintiff ap-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. 5 U.S.C. § 7501(b) (1977) guarantees employees certain procedural rights against an employer agency seeking adverse personnel action. That section provides:

"An individual in the competitive service whose removal or suspension without pay is sought is entitled to reasons in writing and to—

"(1) notice of the action sought and of any charges preferred against him;

"(2) a copy of the charges;

"(3) a reasonable time for filing a written answer to the charges, with affidavits; and

"(4) a written decision on the answer at the earliest practicable date.

"Examination of witnesses, trial, or hearing is not required but may be provided in the discretion of the individual directing the removal or suspension without pay. Copies of the charges, the notice of hearing, the answer, the reasons for and the order of removal or suspension without pay, and also the reasons for reduction in grade or pay, shall be made a part of the records of the employing agency, and, on request, shall be furnished to the individual affected and to the Civil Service Commission."

5 C.F.R. § 752.202 (1978) implements the statutory mandate, providing in part:

pealed the agency's adverse personnel action to the Civil Service Commission ("CSC").[2]  After hearings in January and March of 1977, the CSC ruled in plaintiff's favor on December 14, 1977.  Although the IRS subsequently reinstated Mr. Smiertka, this fact and the December 14, 1977, ruling do not appear to have been disclosed to the district court before entry of the judgment here on appeal.  See p. 702 below.

The documents which plaintiff seeks were compiled by officers of the IRS in connection with his dismissal, and plaintiff does not dispute that their compilation was "in reasonable anticipation of" the termination proceedings and subsequent appeal to the CSC.  On the date his discharge became effective, plaintiff filed simultaneous requests under both the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1977),[3]

> "(a) *Notice of proposed adverse action.*
> (1) . . . [A]n employee against whom adverse action is sought is entitled to at least 30 full days' advance written notice stating any and all reasons, specifically and in detail, for the proposed action.
> "(2) . . . [T]he material on which the notice is based and which is relied on to support the reasons in that notice, including statements of witnesses, documents, and investigative reports or extracts therefrom, shall be assembled and made available to the employee for his review.  The notice shall inform the employee where he may review that material.
>
> "(b) *Employee's answer.* . . . [A]n employee is entitled to a reasonable time for answering a notice of proposed adverse action and for furnishing affidavits in support of his answer. . . .  If the employee answers, the agency shall consider his answer in reaching its decision."

**2.** 5 C.F.R. § 752.202 (1978) grants a right of appeal to the CSC from an adverse action by the employing agency.  5 C.F.R. § 772.307 provides certain procedural rights during such an appeal, including the rights to counsel, *id.* (c)(1), sworn witnesses, *id.* (c)(2), cross-examination, *id.* (c)(3), and transcript, *id.* (c)(6).

**3.** Plaintiff chose not to pursue his claims under the FOIA in this proceeding.

**4.** Section 3(d)(1) provides in part:
> "(d) Access to records.—Each agency that maintains a system of records shall—
> "(1) upon request by any individual to gain access to his record or to any information

and under the access provisions in § 3(d)(1) of the Privacy Act, 5 U.S.C. § 552a(d)(1),[4] seeking a wide variety of documents relating to the charges against him and to the evidence supporting those charges.  The agency released some of the requested documents but withheld the balance on various grounds, including that of the exemption in § 3(d)(5) of the Privacy Act, 5 U.S.C. § 552a(d)(5).[5]  In this appeal, plaintiff contests only the applicability of this "(d)(5)" exemption, which provides:

> "[N]othing in this section shall allow an individual access to any information compiled in reasonable anticipation of a civil action or proceeding."

Documents withheld on the basis of this exemption are described in an affidavit of an agency attorney, reproduced in the margin.[6]  In brief summary, those documents

> pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him . . . ."

**5.** The agency withheld numerous documents or portions thereof on the basis of various exemptions in FOIA, particularly the exemption in 5 U.S.C. § 552(b)(5) ("intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency").  Under the Privacy Act, the agency withheld certain information as not being part of a "system of records" as that term is defined in 5 U.S.C. § 552a(a)(5).  See note 9 below.  Other documents were withheld as exempt under 5 U.S.C. § 552a(k)(2) ("investigatory material compiled for law enforcement purposes"); others because they concerned individuals other than the requestor, *see* 5 U.S.C. § 552a(d)(1); and others because they were compiled in anticipation of a "civil . . . proceeding," *see* 5 U.S.C. § 552a(d)(5).

**6.** The affidavit of David Jay Markman, Attorney, Central Legal Services Division, Office of the Chief Counsel of the IRS, dated October 21, 1977, reads in pertinent part:
> "5. . . . [T]he following documents were prepared under the following circumstances:
> "(a) Undated draft of a memorandum from the Regional Commissioner to the District Director of the Detroit District transmitting the Inspection Report and the Regional Personnel Office's analysis of the report.  This

consist of memoranda and intra-agency communications analyzing various aspects of the adverse action against plaintiff. The analyses cover, among other items, "technical, procedural and evidentiary problems" potentially arising during the adverse action, the nature of the charges to be levelled against plaintiff, and problems of coordinating plaintiff's adverse action with other adverse actions initiated in the same region.

After exhausting administrative procedures under FOIA and the Privacy Act, and while the appeal of his termination was pending before the CSC, plaintiff Smiertka continued his quest for documents in the district court, as authorized by § 3(g) of the Privacy Act, 5 U.S.C. § 552a(g).[7] In this action for an injunction and damages, filed November 16, 1976, plaintiff sought relief solely under the access provisions of the Privacy Act, 5 U.S.C. § 552a(d)(1); he chose not to proceed under FOIA. Following the defendant agency's answer, cross-motions for summary judgment, a hearing on June 14, 1977, and supplemental cross-motions for summary judgment, the district court entered an order denying plaintiff's motion and granting summary judgment to the

draft was intended to serve as a cover letter transmitting the Inspection Report to the Detroit District and stressed the need to consult with the Regional Personnel Office in order to achieve uniformity and consistency with regard to the adverse actions initiated within the Central Region. An adverse action case may be overturned by the FEAA on appeal on the grounds that the adverse action was inconsistent with similar adverse actions within the particular region or district involved. The severity of the penalty exacted in allegedly similar adverse actions was an issue in this case. The final memorandum has been previously provided to plaintiff.

"(b) Draft of an analysis of the adverse action case. The draft was prepared in order to enable the Regional Personnel Office to advise the Detroit District in regard to the technical, procedural, and evidenciary [sic] problems which might arise in the processing and appeal of the adverse action.

"(c) Memo dated November 3, 1975, from the Regional Personnel Officer to the Regional Commissioner through the Acting Assistant Regional Commissioner (Administration), Mr. Arthur Collinson. The memo transmitted the Inspection Report from the Regional Personnel Officer to the Regional Commissioner and makes a preliminary analysis of the case.

"(d) A copy of a memo from the Chief of the Intelligence Division, Detroit District, to the District Director through the Chief of the Personnel Branch, Detroit District. This memo was prepared in order to recommend the initiation of the adverse action in question.

"(e) Memo from the Chief, Personnel Branch, Detroit District, to the Regional Personnel Officer, Central Region, concerning overage Inspection cases. This memo was prepared as a status report in regard to several Inspection Reports including plaintiff's. The overage Inspection reports are prepared to ensure that cases are decided promptly so that in the event of litigation, a case will not be overturned based upon unwarranted delays.

"(f) Handwritten note from the Chief of the Labor Relations Section, Detroit District, to the Chief of the Personnel Branch, Detroit District, dated January 28 discussing the potential charges to be leveled against plaintiff in the adverse action. This memo was prepared in order to initiate a discussion of the charges.

"(g) A copy of a memo from the Chief of the Personnel Branch, Detroit District, to the Chief of the Intelligence Division dated July 6, 1976, in reference to the recommendation in regard to the adverse action previously submitted by the Chief of the Intelligence Division. This document requested a clarification of the initial recommendation.

"(h) Memo from the Chief, Administration Division, Detroit, to the District Director regarding his recommendation in reference to the adverse action. This memo was prepared for the advice of the District Director."

7. Section 3(g) of the Privacy Act provides, in pertinent part:

"(g)(1) Civil remedies.—Whenever any agency

. . . . .

(B) refuses to comply with an individual request under subsection (d)(1) of this section;

. . . . .

the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

. . . . .

"(3)(A) In any suit brought under the provisions of subsection (g)(1)(B) of this section, the court may enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him."

agency. *Smiertka v. United States Department of Treasury, Internal Revenue Service*, 447 F.Supp. 221 (D.D.C., Feb. 16, 1978).

With respect to the documents analyzing various aspects of the agency's adverse action, the district court addressed the following issue:

". . . [whether] the protection afforded by section 3(d)(5) was meant to extend only to items protected under the attorney's work product doctrine, and not, as in this case, to documents prepared by and at the direction of law agency staff persons."

447 F.Supp. at 227. Plaintiff also contended in that court that a series of daily reports, prepared by an agency investigator and containing references to the investigation of him, were accessible under Privacy Act § 3(d)(1). The district court ruled against plaintiff on both of these issues. It held that the documents compiled in anticipation of the termination proceedings fell within the language of the § 3(d)(5) exemption and that that exemption was not "limited to work product materials." *Id.* The court further held that the daily reports fell outside the scope of § 3(d)(1) because they were "not accessed by plaintiff's name or other personal identifier." *Id.* at 229. See notes 9, 11 and 12 below.

In December 1977, prior to entry of judgment in the district court action, plaintiff had prevailed in his appeal to the CSC of the defendant IRS's adverse action. However, it appears that the parties failed to notify the district court of this successful appeal and of Mr. Smiertka's subsequent reinstatement, since the court's opinion of February 1978 refers to the CSC appeal as "presently pending." 447 F.Supp. at 223. Therefore, the district court had no opportunity to consider what effects these events might have had upon the parties' contentions.

At oral argument in this appeal, counsel for the Government informed this court that one result of the successful appeal to the CSC has been removal of all references to the adverse action from plaintiff's personnel file. While assuring this court that the documents plaintiff seeks do still exist, Government counsel stated that they are now placed in an "adverse action file," at an unspecified location. He further indicated that access to such files is highly restricted and that they would not be available to persons requesting information for personnel or credit reference purposes. However, counsel could not specify the conditions under which such records are kept or upon which access to them would be provided.

## II.

These intervening circumstances may have given the issues in this case a shape entirely different from that delineated in the briefs on this appeal.

Plaintiff appealed only the issue of whether the § 3(d)(5) exemption was applicable to the documents analyzing the proposed adverse action. Regarding this exemption, he presented to this court a contention which was slightly different from that which the district court addressed: that the terms "civil actions or proceedings" in § 3(d)(5) refer only to actions or proceedings in federal courts, and that, therefore, the exemption "does not encompass administrative hearings such as the Civil Service Commission adverse action hearing here involved." Brief for Plaintiff-Appellant at 5. The agency contended in opposition that the civil proceedings contemplated by the statutory exemption do encompass administrative proceedings, at least where such proceedings have most of the procedural earmarks of judicial proceedings, as in this case.[8]

---

**8.** There is no dispute that the information at issue in this appeal was compiled "in reasonable anticipation" of adversary proceedings. 447 F.Supp. at 227. In his reply brief at 7–8, plaintiff Smiertka also now seems to concede that the materials which he seeks all contain

agency analyses or opinions, as opposed to factual information; and that in the federal courts such materials would be protected under F.R.Civ.P. 26(b)(3) and the "work product" doctrine, *see Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). *Cf. Mervin v.*

## III.

Without ascertaining the present status of the documents which Mr. Smiertka seeks, this court is unable to determine whether any of the above contentions remain pertinent to the changed facts of this case. At least three new questions now intrude themselves upon the scene.

First, it is not clear that the requested materials are any longer contained in a "system of records" within the meaning of the Act: that is, whether the information therein is retrieved by any individual's name or other identifier.[9] Even if the documents are still contained in a "system of records," it is quite possible that they are no longer filed and retrieved by plaintiff's own name or other identifier. According to the Office of Management and Budget's Priva-

cy Act Guidelines ("OMB Guidelines"), 40 Fed.Reg. 28,948 (July 9, 1975),[10] § 3(d)(1) of the Act does not require the agency to grant access to information which is not retrievable by the requestor's own name or identifier.[11] Thus it is necessary to ascertain whether the requested documents which are now contained in an "adverse action file" any longer fall within the scope of the access requirements of § 3(d)(1),[12] before answering the question presented to this court: whether those documents fall within the § 3(d)(5) *exemption* to the access requirements. A negative answer to the former question would, of course, make the latter inconsequential.

Another complication which may have arisen is that the materials in the "adverse action file" might be collected and retained

*FTC,* 192 U.S.App.D.C. 212, 591 F.2d 821 (1978) (FOIA exemption subsumes attorney work product privilege).

9. Section 3(a)(5) of the Act, U.S.C. § 552a(a)(5), defines the term "system of records" to mean "a group of any records under the control of any agency *from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular* assigned to the individual." (Emphasis added.)

10. The Guidelines were promulgated at the express direction of section 6 of the Privacy Act, Pub.L. 93–579, 88 Stat. 1897 (see note following 5 U.S.C. § 552a). That section provided:
   "The Office of Management and Budget shall—
   "(1) develop guidelines and regulations for the use of agencies in implementing the provisions of section 552a of title 5, United States Code [this section], as added by section 3 of this Act; and
   "(2) provide continuing assistance to and oversight of the implementation of the provisions of such section by agencies."

11. The OMB Guidelines provide, with respect to the access provision in § 3(d)(1) of the Act:
   "This provision it should be noted, gives an individual the right of access only to records which are contained in a system of records.
   . . .
   "This language further suggests that the Congress did not intend to require that an individual be given access to information which the agency does not retrieve by reference to his or her name or some other identifying particular. See subsection (a)(5). If an individual is named in a record about someone else . . . and the agency only re-

trieves the portion pertaining to him by reference to the other person's name . . . the agency is not required to grant him access. Indeed, if this were not the case, it would be necessary to establish elaborate cross-references among records, thereby increasing the potential for privacy abuses." 40 Fed.Reg. 28,957.

12. This issue involves both a factual determination—whether the requested materials are not at present retrievable by the requestor's own name or identifying particular—and a legal determination—whether the OMB guidelines precluding access to such materials are valid. The district court in this case affirmed the validity of these guidelines as they applied to the agency investigator's daily reports, 447 F.Supp. at 228–29, and the plaintiff has not appealed that ruling. For the presumption of validity attaching to administrative regulations such as these, which were promulgated pursuant to express congressional authority in the Privacy Act, *see Local 2047, Am. Fed'n of Gov't Employees v. Defense General Supply Center,* 423 F.Supp. 481, 485 (E.D.Va.1976), *aff'd,* 573 F.2d 184 (4th Cir. 1978). *See generally Griggs v. Duke Power Co.,* 401 U.S. 424, 433–34, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *United States v. City of Chicago,* 400 U.S. 8, 10, 91 S.Ct. 18, 27 L.Ed.2d 9 (1970); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Power Reactor Dev. Co. v. Electrical Union,* 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1961) (deference due to "contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new").

solely in anticipation of a potential civil damage action in federal court, brought by Mr. Smiertka after his reinstatement. In that event, the pertinent question would be whether the adverse action file's contents should be considered to be "compiled in reasonable anticipation of" such a post-reinstatement civil action, within the contemplation of § 3(d)(5). The question presented in the appeal briefs, whether § 3(d)(5) applies to administrative as well as judicial proceedings, would again be no longer pertinent.

A third possible question is whether the requested documents, under their changed conditions of agency retention, now fall into a separate category of exemption from the access requirements of the Privacy Act. *See, e. g.,* § 3(k)(4) of the Act, 5 U.S.C. § 552a(k)(4) (exemption for records "required by statute to be maintained and used solely as statistical records"). An affirmative answer to this question again obviates the need to answer the question presented in the appeal briefs.

In sum, the conditions under which an agency retains and retrieves information are a crucial determinant of the scope of the access requirement of the Privacy Act. *Cf. Zeller v. United States,* 467 F.Supp. 487 (E.D.N.Y., 1979). The Act empowers courts only to "order the production to the complainant of any agency records *improperly* withheld from him." 5 U.S.C. § 552a(g)(3)(A) (emphasis added). Without current knowledge of the status of the materials requested, a court cannot reliably ascertain whether the withholding of these materials is improper, nor otherwise determine how Congress intended to accommodate the competing governmental and individual interests affected by the Act.

Under these circumstances, therefore, we conclude that it is fruitless for this court to answer questions that may no longer be pertinent to the case, or to attempt to anticipate questions from an unknown state of present facts. Hence the case will be remanded so that the district court may determine the conditions under which the requested documents are now maintained and any other pertinent facts. That court shall thereupon determine whether the case should be dismissed as moot, *see County of Los Angeles v. Davis,* 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979); *Reporters Committee for Freedom of the Press v. Simpson,* 192 U.S.App.D.C. 335, 341, 591 F.2d 944, 950 (1978), or decide it in accordance with the law applicable to the facts found. Each party will bear its own costs in this court.