857 F.2d 1112
 Charles MANUEL, Plaintiff-Appellant,
v.
VETERANS ADMINISTRATION HOSPITAL; Thomas W. Simpson; James
G. Fasone; Jerome Hoban; Paul Vance; William
Beutell and James Stephens, Defendants-Appellees,
Robert LeBlanc; Maynard Enos, Defendants.
 No. 87-1430.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 19, 1988.
Decided Sept. 28, 1988.
 
 1
 John R. Foley (argued), Prather, Harrington & Foley, P.C., Detroit, Mich., for plaintiff-appellant.
 
 
 2
 Francis L. Zebot (argued), Asst. U.S. Atty., Detroit, Mich., for defendants-appellees.
 
 
 3
 Before KEITH and WELLFORD, Circuit Judges, and HORTON, District Judge.*
 
 
 4
 HORTON, District Judge.
 
 
 5
 Charles Manuel, the appellant, brought this lawsuit against the Veterans Administration for alleged violations of the Federal Privacy Act, 5 U.S.C. Sec. 552a. Mr. Manuel claims he was denied access to three Veterans Administration documents generated by special undercover investigators Maynard Enos and Robert LeBlanc who were assigned to a special investigative project at the VA Medical Center, Allen Park, Detroit, Michigan. Mr. Manuel charges the Veterans Administration failed to place the three documents generated by special investigators Enos and LeBlanc into the Veterans Administration's system of records and that failure constitutes a violation of the Federal Privacy Act, 5 U.S.C. Sec. 552a(d)(1).
 
 
 6
 The United States District Court for the Eastern District of Michigan granted summary judgment in favor of the Veterans Administration, finding Mr. Manuel had failed to state a claim under the Privacy Act for which relief could be granted.
 
 
 7
 The district court ruled the Privacy Act did not include the three documents involved in this case. In reaching its decision, the Court stated:
 
 
 8
 The defendant VA has filed a Motion for Summary Judgment under Rule 56. The motion is directed to Count [II], which is the only remaining Count in [p]laintiff's [s]econd [a]mended [c]omplaint. Count [II] has been labeled by plaintiff as violation of the Privacy Act. Under Count II Plaintiff asserts that he has requested on, quote, at least two separate occasions, end of quote, copies of two Reports of Contact and [a] Uniform Offense Report. Plaintiff asserts that he is aware that the--a report does exist and believes that the reports have been intentionally or unintentionally mislaid. Plaintiff has also asserted that, in response to the request that defendants Vance and Stephens have informed him that there are no Reports of Contacts or Uniform Offense Reports within any of the VA files, plaintiff argues that this is in error.
 
 
 9
 In the instant Motion, the movant has attached an affidavit from defendant Thomas W. Simpson who, as the custodian of the 32VA00 system and Chief of the Security Service for the Veterans Administration Hospital in Allen Park, Michigan, asserts that he has examined the 32VA00 system and does not find any of the information contained therein.
 
 
 10
 Plaintiff argues that the defendant's Motion has been narrowly drawn. It was neither the intent--strike that. The plaintiff argues--strike that. The plaintiff argues, in response, that it is not the intent of the Congress to make such request on the Privacy Act so narrow in scope so as to allow an abuse of the system, as he believes has occurred. The Court has found this motion to be troubling in the sense that an examination of the statute would, in the judgment of the Court, suggest that the--there are individuals who are required to maintain certain records. Plaintiff has correctly pointed out that under 32VA00, that records of veterans, employees and citizen health care facilities investigation records are to be maintained at such VA health care facility, including the facility in Allen Park, Michigan.
 
 
 11
 Plaintiff has also pointed out that the records of employees, quote, who have been accused of improper and unethical conduct, end of quote, should also be maintained. The record in its present form indicates that the custodians of these records have ostensibly and/or presumably conducted an examination of the records and found the records--the system to be barren. The Court believes that the defendant, through its representatives, has fully satisfied the language and the letter of the law. The difficulty that the Court has had revolves around a situation such as that which has been described by plaintiff wherein an individual who, for bad purposes or through negligence, fails or refuses or neglects to or purposefully prevents a document from getting into the system for his own purposes.
 
 
 12
 The Court does not believe that the Privacy Act covers such a situation. Thus, the Court believes that the defendants' Motion for Summary Judgment should be granted.
 
 
 13
 The Court has been troubled because the Privacy Act, as it apparently is presently constituted, allows or creates a situation whereby a well-meaning citizen of the United States can have his or her rights denied or at least thwarted by the purposeful or malicious actions of a government employee who has been charged with the responsibility of maintaining these records. However, the facts are clear and despite the belief or conjecture of the plaintiff, that Beutell, Fasone, Simpson and/or Vance have purposefully misdirected the information that he seeks. This Court is powerless to make a judgment to the contrary. Thus, in a technical sense, the Court concludes that there are not genuine issues of material fact with regard to this issue, and the Court will enter a Summary Judgment in favor of the defendant Veterans Administration as relates to Count [II], which, according to the records of the Court, is the only remaining count which remains in this case.
 
 
 14
 Now, if there can be some evidence, Mr. Foley or Mr. Manuel that--which would in someway account for the disappearance of the records, then I will entertain a motion to reinstate. But I have made my decision on a vary narrow basis, namely; that the record in its present form does not support the contention of the plaintiff that there has been a violation of the Privacy Act. The Court believes that the Privacy Act, as Mr. Foley has correctly pointed out, has many gaps. We believe this is a gap which the Congress should plug up.
 
 
 15
 Charles Manuel appealed to this Court the district court's decision granting summary judgment in favor of the Veterans Administration. He contends the decision of the district court was predicated on an overly technical reading of 5 U.S.C. Sec. 552a(d)(1). Specifically, Mr. Manuel appealed to this court seeking a review of the district court's ruling on two points:
 
 
 16
 (1) the denial of access to three investigative reports or documents, and
 
 
 17
 (2) the failure of the custodian of records to place those documents within the Veterans Administration's system of records.
 
 
 18
 The facts in this case viewed in the light most favorable to Mr. Manuel are as follows. At the time of filing this lawsuit, Charles Manuel was a black federal police officer at the Allen Park Veterans Administration Medical Center ("VAMC"), with a December 11, 1979, seniority date. In December, 1980, Manuel became aware of an open detective position, under the supervision of Jerome Hoban, at the Palo Alto, California, VAMC. Manuel applied for the position pursuant to the requirements of VA Form SF171.
 
 
 19
 On December 20, 1980, Ms. Kathy Alfred, a secretary at the Allen Park VAMC, received a telephone call from an individual representing himself to be Jerry Hoban, Chief of Police, Palo Alto, California, VAMC, who asked to speak with Mr. Manuel. Ms. Alfred informed Hoban that Manuel was unavailable. Hoban then advised her that Manuel was being considered as one of the top five candidates for the position of detective at the Palo Alto, California, VAMC.
 
 
 20
 On December 28, 1980, Hoban interviewed Manuel over the telephone for the detective position. Several weeks later, Hoban again telephoned the Allen Park VAMC and spoke to Lt. Ronald Hypes, Manuel's immediate supervisor, regarding Manuel's performance and capabilities. Hypes informed Hoban that Manuel was an efficient and punctual police officer.
 
 
 21
 Sometime in April of 1981, a secretary in the personnel division at the Allen Park VAMC advised Manuel that Hoban had telephoned the Allen Park facility again and had requested that Manuel resubmit an application (VA Form SF171) for the position of detective at the Palo Alto, California, VAMC. Later in April of 1981, Manuel was contacted by Mr. Frank A. Manies, Personnel Management Specialist, Office of the Special Counsel, Washington, D.C. Mr. Manies discussed Manuel's application for the position of detective at the Palo Alto, California, VAMC and informed Manuel that he was investigating some "irregularities in filling the detective post at Palo Alto." Again, in late April of 1981, Manies spoke to Lt. Ronald Hypes, Manuel's supervisor and co-worker, regarding whether Hoban had telephoned the Allen Park VAMC and inquired about Manuel's suitability for filling the position of detective at the Palo Alto VAMC.
 
 
 22
 In June or July of 1982, Mr. Manies again contacted Manuel and informed him that: (a) Hoban denied ever speaking to Manuel regarding his application for the position of detective at the Palo Alto, California, VAMC, even though both Kathy Alfred and Lt. Hypes were present during Manuel's telephone interview and had spoken to Hoban themselves; (b) Hoban had said Manuel had not been considered for the position of detective since he had "failed to respond" to Hoban's inquiries; (c) five individuals were being considered as possible candidates for the detective position at the Palo Alto, VAMC; and (d) Manuel was candidate number five and his name had been taken off the list to make room for the name of Mr. Dreverskracht, a personal friend of Hoban's.
 
 
 23
 Mr. Dreverskracht, instead of Manuel or one of the other four announced candidates, had been awarded the position of detective at the Palo Alto, California, VAMC by Hoban. Mr. Dreverskracht was not one of the original five finalists considered.
 
 
 24
 Mr. Manies asked Manuel if he would be willing to testify in an administrative proceeding against Mr. Jerome Hoban for violation of 5 U.S.C. Sec. 2302(b)(4), (6), (8). Manuel agreed. Hearings were held on the complaints against Jerome Hoban in San Francisco, California, between November 18, and December 2, 1983. During the course of those hearings, Messrs. Simpson, Enos, LeBlanc and Fasone, all former individual defendants, testified. William Beutell, Associate Director of the Allen Park VAMC at that time, was also subpoenaed to testify but never took the stand. Hoban was ultimately found guilty of violating 5 U.S.C. Sec. 2302(b)(4) with respect to Manuel.
 
 
 25
 Prior to the hearing, Thomas Simpson, Chief of Police, Allen Park VAMC, made numerous telephone requests to James G. Fasone, Regional Security Director, VA, commencing some time shortly before August of 1983, requesting that a special investigation be conducted at Allen Park VAMC by criminal investigators, Robert LeBlanc and Maynard Enos.
 
 
 26
 Three documents, copies of which Manuel sought to obtain under the Privacy Act, were generated by VA criminal investigators Robert LeBlanc and Maynard Enos. They were under the supervision of James Fasone, Washington, D.C. They were based in Livermore, California, but performed the requested undercover investigation at VAMC, Allen Park, concerning drugs between October 12-19, 1983. One Report of Contact dated October 15, 1983, signed by LeBlanc, reported that he had seen VA Police Officer Manuel solicit and execute underpayment for a cup of coffee and three hard boiled eggs in the VAMC, Allen Park Canteen about 10:00 a.m. on that date.
 
 
 27
 A second undated Report of Contact signed by LeBlanc reported overhearing a conversation between Manuel and another VA Police Officer Ronald Hypes at the same Canteen on October 18, 1983, at about 10:30 a.m. The conversation involved the alleged tailoring of proposed testimony for a hearing to be held in November--December 1983 in San Francisco, California. The hearing was to be conducted by the Office of Special Counsel for the Merit Systems Protection Board against Jerome Hoban, VA Chief of Police, VAMC, Palo Alto, California, concerning alleged irregularities in filling the detective post at the VAMC, Palo Alto. Manuel as well as Simpson (later chosen as Allen Park Security Chief) were both unsuccessful candidates for the detective position.
 
 
 28
 The Uniform Offense Report, the third document, signed by LeBlanc listed three separate offenses that allegedly occurred on October 15, 1983, involving three different individuals, Donald Wright, conspiracy to sell marijuana; Walter J. Brewer, conspiracy to sell marijuana/sale of marijuana; and Manuel, "Theft of Government property." Of these three offenses, the only violation notice issued (i.e., criminal charge brought) was against Brewer.
 
 
 29
 LeBlanc, who prepared all three documents, turned them over to Enos, his immediate supervisor, without retaining any copies. Together with other documents, Enos turned over the Uniform Offense Report and the related Report of Contact (concerning Manuel's alleged underpayment for a cup of coffee and three hard-boiled eggs) to then Associate Director Beutell of VAMC, Allen Park. Copies of the Uniform Offense Report and the related Report of Contact were sent to Fasone in Washington, D.C., and also initially kept by Enos in Livermore, California. The original Uniform Offense Report (with related Brewer Violation Notice) went from Beutell at VAMC, Allen Park to VA District Counsel MacMillan (in Detroit) and then to the United States Attorney's Office for possible criminal prosecution without any copies being made or retained by Beutell (or anyone) at VAMC, Allen Park or MacMillan (or anyone) at VA District Counsel's Office, McNamara Building, Detroit. The original Report of Contact (concerning the coffee and eggs), which Beutell kept temporarily in his desk at VAMC, Allen Park, after receipt from Enos, was destroyed by him sometime in late October 1983 because of insufficient consequence to require further action.
 
 
 30
 The third document at issue, the Report of Contact involving proposed testimony at the Hoban hearing, was not given by Enos to Beutell as the other two documents (no criminal or disciplinary action apparently being contemplated). Instead copies were sent to (1) Fasone in Washington; (2) the Office of Special Counsel (conducting the Hoban hearing); (3) VA District Counsel, San Francisco (monitoring the Hoban hearing); (4) Hoban and; (5) a copy was retained by Enos in Livermore, California.
 
 ACCESS TO RECORDS
 
 31
 The Privacy Act, Sec. 552a(d)(1), specifically states:
 
 
 32
 (d) Access to Records. Each agency that maintains a system of records shall--
 
 
 33
 (1) Upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him, except that the agency may require the individual to furnish a written statement authorizing discussion of that individual's record in the accompanying person's presence; (Emphasis Added).
 
 
 34
 5 U.S.C. Sec. 552a(d)(1).
 
 
 35
 The access provision of Sec. 552a(d)(1) is, therefore, confined to records or information within a system of records. The term "system of records" is defined within the context of the Privacy Act as:
 
 
 36
 [T]he term "system of records" means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual. (Emphasis Added).
 
 
 37
 5 U.S.C. Sec. 552a(a)(5).
 
 
 38
 The Privacy Act further requires each federal agency which maintains a system of records to publish in the Federal Register, a notice of the existence and character of each and every system of records it employs. 5 U.S.C. Sec. 552a(e)(4).
 
 
 39
 Pursuant to Sec. 552a(a)(5), the VA would have violated Sec. 552a(d)(1) had the records sought by Mr. Manuel been contained within a system of records which included a group of records under the control of the VA from which information was retrievable by the name of Charles Manuel or by some identifying number, symbol or other identifying particular assigned to Charles Manuel. It is clear a system containing such records did not exist. Manuel and the VA agree the system of records applicable to the Uniform Offense Reports and Report of Contact requested by Manuel is entitled "32VA00, Veteran Employee and Citizen Health Care Facility Investigation Records" (hereinafter referred to as 32VA00). The custodian of this system at VAMC, Allen Park, is Thomas Simpson, Chief of Security Service. Mr. Simpson by affidavit swore that none of the three documents in question is or ever has been in his files.
 
 
 40
 It is clear, considering relevant case law, the Privacy Act does not apply where documents or information at issue are not contained in the agency's "system of records." See Smiertka v. United States Dep't of Treasury, 447 F.Supp. 221, 228-29 (D.D.C.1978), vacated and remanded on other grounds, 604 F.2d 698 (D.C.Cir.1979). There the Court stated the plaintiff was not entitled to access to a series of daily reports prepared by an agency investigation. The daily reports contained references to investigations conducted regarding the plaintiff. Such items did not qualify as "records" in a "system of records" because they were not accessible by the plaintiff's name or other personal identifier, but by the name of the agency investigator who prepared them. Id. at 229. In this case the record indicates the documents sought by Manuel were not included within the VAMC, Allen Park system of records under any name. Beutell admittedly destroyed one document because the incident cited therein was of "insufficient consequence to require further attention." This Court has ruled in Hanley v. United States Dep't of Justice, 623 F.2d 1138 (6th Cir.1980), that records not kept within a system of records are not protected under the Privacy Act. See also Fagot v. FDIC, et al. 584 F.Supp. 1168 (D.P.R.1984), citing Hanley for the above proposition.
 
 
 41
 The Court, therefore, concludes Mr. Manuel's assertion that he was denied access to the three documents in this case in violation of the Privacy Act is without merit. The three documents in question were never a part of the system of records of the VA. The Privacy Act, Sec. 552a(d)(1), therefore, was not violated by the VA when it denied Manuel access to the three documents to which he sought access.
 
 
 42
 DUTY TO PLACE RECORDS WITHIN A SYSTEM OF RECORDS
 
 
 43
 Having determined the district court was correct in ruling that records not kept within a system of records are not protected by the Privacy Act, this Court must now resolve the issue of whether 32VA00 imposes an affirmative duty on the Veterans Administration to place documents which fall within the agency's system of records in such a system. Specifically, Manuel alleges the three documents prepared by VA criminal investigators Enos and LeBlanc (two Reports of Contact and one Uniform Offense Report), which were used to impeach his testimony at the administrative hearing of Jerome Hoban for violations of 5 U.S.C. Sec. 2302(b)(4), were not placed into his file at the VAMC, Allen Park, Michigan. Mr. Manuel claims the custodian of the records for the VA had an affirmative duty to place these documents into its system of records. The district court determined that the Privacy Act does not cover a situation where allegedly "an individual who, for bad purposes or negligence, fails or refuses or neglects to or purposely prevents a document from getting into the system for his own purposes." Manuel and the VA are, however, diametrically opposed as to whether 32VA00 imposes an affirmative duty on a VA employee (custodian of the system of records) to place documents which fall within the ambit of 32VA00 into the "system" or whether the decision to place the document in the system in the first instance is left to the unfettered discretion of the VA employee. Manuel contends the relevant provisions of the Privacy Act impose an affirmative duty on VA employees to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. Sec. 552a(e)(5).
 
 
 44
 The Veterans Administration advances the argument that there is simply no duty imposed upon it by the Privacy Act requiring affirmative placement of a record into an agency's system of records, nor can there be any cause of action because of the failure to place a record in the system.
 
 
 45
 The VA points out, Manuel has failed to cite any existing case law which provides support for his argument that federal employees have an affirmative duty to place records within a system of records. Manuel in his brief submits that there are no Federal cases directly on point with the facts in this case.
 
 
 46
 Relevant case law indicates an agency is not required to place information in its records at the request of an individual. See Wren v. Heckler, 744 F.2d 86 (10th Cir.1984). In Wren, the plaintiff, John L. Wren, brought a lawsuit against the Secretary of Health and Human Services and the Commissioner of the Social Security Administration claiming an unlawful withholding of documents which he had requested pursuant to the Privacy Act, 5 U.S.C. Sec. 552a. The Tenth Circuit upheld the district court's decision granting summary judgment in favor of the Secretary and the Commissioner as the documents which Wren sought access were not "contained in a 'system of records', and [Wren was] therefore not entitled to access under the [Privacy Act]." 744 F.2d at 89. Although Wren made basically the same argument Manuel presents before this Court, i.e. "the documents in question should have been placed into his personnel file, to which he clearly has access pursuant to the [Privacy Act]" Id., the court held an agency is not required to place information into its system of records merely because an individual requests that this be done. See Id. at 89, citing Savarese v. United States Dep't of Health, Education & Welfare, 479 F.Supp. 304 (N.D.Ga.1979), aff'd mem. sub nom. Savarese v. Harris, 620 F.2d 298 (5th Cir.1980), cert. denied, 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981).
 
 
 47
 In Savarese, the district court, addressing the present issue stated:
 
 
 48
 The agency is not required to place information into its records simply because the subject in question requests such action, and neither is the agency required to remove information from its records upon request. The agency is, however, required to
 
 
 49
 maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination ...
 
 
 50
 5 U.S.C. Sec. 552a(e)(5). This test of reasonableness has been applied by the courts in cases such as the present, so that if the court determines that the agency has done what is reasonable in assuring the accuracy of the information included, no more is required. See Smiertka v. United States Dept. of Treasury, 447 F.Supp. 221, 226 n. 35 (D.D.C.1978), remanded on other grounds, 196 U.S.App.D.C. 34, 604 F.2d 698 (D.C.Cir.1979).
 
 
 51
 479 F.Supp. at 306.
 
 
 52
 Under 5 U.S.C. Sec. 552a(e)(1), the Privacy Act further provides that each agency maintaining a system of records shall "maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President." The VA argues even if there was a cause of action under the Act for the per se failure to place a record into a system of records, the exclusion of Sec. 552a(e)(1) for records not "relevant and necessary to accomplish a [required] purpose of the agency" would appear to apply since the three documents in question were not used by the VA in making any determination about Manuel and no criminal charges were levied against him. Mr. Beutell, Assistant Director of the Allen Park VAMC, admitted he actually destroyed one of the documents because, in his words, the incident was of "insufficient consequence to require further action."
 
 
 53
 According to the record, there was not, and never has been, an adverse determination or remedial action against Manuel made by the VA based upon the documents at issue. The existence of the documents were first discovered by Manuel while testifying in San Francisco, California, in late 1983 at the administrative hearing of Jerome Hoban for alleged improprieties in filling a vacant detective position at the VAMC, Palo Alto, California. Although introduced at the hearing for the sole purpose of impeaching the credibility of Manuel as a witness, the documents were never used by the VA nor was Manuel's conduct as an officer the subject of an official investigation. The "reports" were drafted by criminal investigators Enos and LeBlanc as a result of information gathered while investigating alleged drug activity by VA employees at the VAMC, Allen Park. There is no evidence these documents were to be used by the VA for official purposes outside of the special criminal investigation at the Allen Park VAMC.
 
 
 54
 It therefore was reasonable for the VA to not include these documents in the VA "system of records." The VA complied with the guidelines of 5 U.S.C. Sec. 552a(e)(5), and its motion for summary judgment was reasonable in view of the use that was made of the documents. Therefore, we decline to adopt Manuel's contention that 5 U.S.C. Sec. 552a places an affirmative duty on VA employees to place records into a "system of records", particularly in the situation where documents are involved which are not part of an official agency investigation into activities of the individual requesting the records, and where the records requested do not have an adverse effect on the individual.
 
 NONCONSENSUAL DISCLOSURE
 
 55
 Manuel further asserts his Privacy Act claim includes nonconsensual disclosure of records in violation of 5 U.S.C. Sec. 552a(b) and the failure to maintain all records used by an agency in "making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. Sec. 552a(e)(5). In support of this claim, Manuel cites as authority Bartel v. Federal Aviation Administration, 725 F.2d 1403 (D.C.Cir.1984). However, a review of the record shows Manuel apparently did not raise this claim before the district court as a ground for defeating the VA's motion for summary judgment. However, because this claim was cited by Manuel as grounds for reversal of the district court's order granting summary judgment in favor of the VA, we shall address the nonconsensual disclosure issue.
 
 
 56
 This Court finds Manuel's claim of nonconsensual disclosure of records in violation of 5 U.S.C. Sec. 552a(b) inapplicable under the facts presented, as the three documents which he claims were "disclosed" were not records included in an agency's system of records and were not subject to the strictures of Sec. 552a(b). In relevant part, 5 U.S.C. Sec. 552a(b) reads as follows:
 
 
 57
 (b) Conditions of disclosure.--No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains ...
 
 
 58
 The Bartel decision does not appear to support Manuel's position because the District of Columbia Circuit follows the interpretation of other circuits, including this circuit, that the wrongful disclosure provision, Sec. 552a(b), applies only to an agency's systems of records, not to all agency records. Bartel v. FAA, 725 F.2d 1403, 1408, n. 10 (D.C.Cir.1984),[1] Accord, Hanley v. United States Dep't of Justice, 623 F.2d 1138, 1139 (6th Cir.1980); Doyle v. Behan, 670 F.2d 535, 538-39 (5th Cir.1982); Johnson v. Dept. of Air Force, 526 F.Supp. 679, 681 (W.D.Okla.1980), aff'd, 703 F.2d 583 (Fed.Cir.1982); Savarese v. United States Dep't of Health, Education & Welfare, 479 F.Supp. 304, 307 (N.D.Ga.1979), aff'd mem. sub nom. Savarese v. Harris, 620 F.2d 298 (5th Cir.1980), cert. denied, 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981).
 
 
 59
 The other concern of Manuel involves the alleged violation of Sec. 552a(e)(5) dealing with the accuracy, relevance, timeliness, and completeness of records maintained by an agency in making any determination about an individual. Manuel is concerned that records of employees "who have been accused of improper and unethical conduct" should be maintained. Indeed, the district court admitted it was troubled by the fact that the Privacy Act, in its current state, permits the situation whereby an employee may be deprived of his or her rights when an agency, or its custodian of records, purposely or with malice misdirects or prevents information from getting into the system of records. This Court concurs with the district court that there are gaps in the Privacy Act. This Court also recognizes those pertaining to an employee and thereby, preventing records from being entered into a system of records. The potential for abuse obviously does exist. See Baker v. Dept. of the Navy, 814 F.2d 1381, 1385 (9th Cir.1987) cert. denied, --- U.S. ----, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987). However, it is the responsibility of Congress to fill in these gaps within the Privacy Act and clarify those areas and situations in which records must be placed within the agency's system of records. A federal agency should work towards maintaining accurate records concerning individual employees. Here there is no indication there was anything improper about the VA's failure to place potentially harmful documents into Manuel's 32VA00 file. There was no "determination" about Manuel made by the VA based upon the three documents at issue. The Court does not want to give a signal to federal agencies that they should evade their responsibility to place records within their "system of records" in violation of the Federal Privacy Act, 5 U.S.C. Sec. 552a. However, in this particular case there was no Privacy Act violation.
 
 
 60
 Therefore, as the documents were not used by the VA in any adverse determination or proceedings against Manuel, and were not "records" included in an agency's system of records, we decline to accept Manuel's contention that there was a nonconsensual disclosure of records by the VA in violation of 5 U.S.C. Sec. 552a(b), or that there was a violation of 5 U.S.C. Sec. 552a(e)(5), as he has failed to show that the VA made an adverse determination as a result of its inaccurate or incomplete records.
 
 CONCLUSION
 
 61
 For the reasons stated above, we AFFIRM the district court's decision granting summary judgment in favor of the Veterans Administration.
 
 
 62
 It is so Ordered.
 
 
 
 *
 The Honorable Odell Horton, Chief Judge of the United States District Court for the Western District of Tennessee sitting by Designation
 
 
 [1]
 For this purpose, Manuel is not aided by the new ground cut by Bartel suggesting that "actual retrieval" from the agency system of records may be unnecessary when disclosure is made by a person who had a role in creating the record in the system of records which contains the information disclosed. Bartel v. FAA, 725 F.2d at 1408-11. Gaps could lead to agencies failing to index documents